KNUPP et al. v. BELL et al.

(Circuit Court of Appeals, Fourth Circuit. May 1, 1917.)

No. 1495.

1. VENDOR AND PURCHASER ⊙══119—CONTRACTS—RESCISSION.

Complainants purchased land, paying part of the consideration, and executing notes and a deed of trust for the remainder. A year thereafter they asserted that defendants' title was defective, but, after submitting the question to an attorney, they paid the notes maturing at that time. When notes due two years after the execution of the contract matured, complainants demanded a rescission of the contract on account of the alleged defects, and refused to consummate their bargain. Defendants denied complainants' ground for rescission, and sold the property under the deed of trust. Eight years after their acceptance of the deed, complainants instituted a suit for rescission; a prior suit having in the meantime been dismissed. *Held* that, in view of their acceptance of the deed, complainants were not entitled to equitable relief, but were limited to relief on the covenants of warranty contained in the deed; this

being particularly true, as neither complainants nor the subsequent purchasers were disturbed in possession.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 212–214.]

2. EQUITY ⬤=178—PLEADING—ANSWER IN COUNTERCLAIM.

In a suit to obtain rescission of a contract for the purchase of land, defendants, the vendors, who had taken up notes for the purchase money discounted at a bank, were entitled to set up in their answer as a counterclaim their demand for relief on the notes, equity rule No. 30 (201 Fed. v, 118 C. C. A. v) providing that the answer must state in short and simple form any counterclaim arising out of the transaction which is the subject-matter of the suit, for defendants' right to recover on such notes would be doubtful, did they not so claim relief.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 414.]

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Suit by William J. Knupp and others against J. Frank Bell, administrator of Oliver D. Jackson, deceased, and others, in which Hugh M. Kerr and another counterclaimed. From a decree for defendants, complainants appeal. Affirmed.

William J. Breene, of Oil City, Pa., and Frank C. Miller, of Norfolk, Va. (P. A. Agelasto, of Norfolk, Va., and Edmond C. Breene, of Oil City, Pa., on the brief), for appellants.

Tazewell Taylor and Thomas H. Willcox, both of Norfolk, Va. (John L. Jeffries, of Norfolk, Va., on the brief), for appellees.

Before KNAPP and WOODS, Circuit Judges, and DAYTON, District Judge.

KNAPP, Circuit Judge. By contract of July 30, 1906, Jackson, Kerr, and Wolcott agreed to sell, and the appellant Knupp, with whom the other appellants were associated, agreed to buy, for $18,000 a tract of about 6,000 acres of timber lands in Carteret .county, N. C. Of the purchase price $1,000 was to be paid on signing the contract, $5,000 on delivery of the deed, and the balance by interest-bearing notes at one and two years, secured by deed of trust upon the property. The contract recited the condition of the title at that time, and the steps which the vendors would take to enable them to convey, or cause to be conveyed, the lands therein described "by a deed of general warranty * * * free and clear from all incumbrances of whatsoever kind or nature." Accordingly there was a sale, under an outstanding lien, to the Jackson Corporation, a Virginia concern, and that corporation, by deed dated September 22, 1906, and containing the agreed covenants, conveyed the property to Knupp, who accepted the deed, paid the $5,000, and executed the notes and deed of trust as provided in the contract.

In the late summer of 1907, shortly before the one-year notes matured, Knupp put forward a claim of defective title, and employed Mr. Hughes, an attorney of Norfolk, to act for him in adjusting the matter. Wolcott, who represented the vendors, testified that it was

⬤=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

agreed between Hughes and himself to submit the question to a North Carolina lawyer by the name of Moore, selected by Hughes, and abide by his decision. Just what question was referred to Moore is the subject of dispute, but he appears to have made a report or written a letter which satisfied Knupp, at least for the time being, and he thereupon paid the 1907 notes, half at that time and half in the following January. In 1908, however, when the two-year notes were about to become due, Knupp asserted that the title was worthless, refused to make further payments, and demanded rescission of the contract, cancellation of the notes, and return of the $12,000 theretofore paid by him. Claiming the title to be good, as they still do, the vendors refused this demand, and instead procured a sale of the property under the trust deed securing the notes. It was bid in for their account for $1,000, which was applied, less expenses and taxes, on the unpaid notes, and subsequently sold again to the parties now in possession. In the meantime the National Bank of Commerce of Norfolk, which had discounted the 1908 notes, brought suit to collect the same in the state of Pennsylvania, where Knupp and his associates resided. They interposed a defense, and also, in 1910, filed a bill in the Eastern district of Virginia, the residence of the appellees, to enjoin the prosecution of the Pennsylvania suit, to rescind the contract in question, and to recover the moneys that had been paid thereon. Answer was made in due course, but for some reason the case was not brought on for trial, and the bill was accordingly dismissed in November, 1913, under equity rule 57.

The present bill, filed in January, 1915, alleges with much detail that the plaintiffs were induced to enter into the purchase contract by false and fraudulent representations, both as to the title to the property and the amount of timber on the tract. In effect, if not in terms, a conspiracy is charged to get from the plaintiffs a large sum of money by deliberate and intentional deceit. The relief prayed for is a rescission of the contract, cancellation of the unpaid notes, and recovery of the $12,000 which had previously been paid. The answer sets forth a full and circumstantial account of the transaction, and meets with explicit and positive denial every averment of fraud or misrepresentation. It also alleges that defendants Wolcott and Kerr own the 1908 notes, having taken them up from the bank, and demands judgment in their favor for the amounts due thereon. Upon consideration of the voluminous proofs submitted, oral and documentary, the learned District Judge dismissed the bill for want of equity, and ordered judgment against the appellants on the counterclaim set up in the answer.

In the view we take of the case, it may be disposed of without extended discussion. The decree appealed from necessarily involves a finding in favor of defendants upon the issue of fraud, and careful study of the record fails to convince us that this finding should be disturbed. True, the testimony of Knupp, chief witness for plaintiffs, makes out a case of purposeful and aggravated deception. On the other hand, Wolcott, who represented the defendants, maintains earnestly that the negotiations were carried on from first to last with honesty and fair dealing. Both these witnesses, and most of the others, were

examined in open court, where their credibility could be tested by personal observation. The experienced judge who presided at the trial evidently believed that defendants' version of the transaction was substantially correct, and no sufficient reason appears for disagreeing with his conclusion on this disputed question of fact. In this court, therefore, it must be assumed that there was no actual or intended fraud. Indeed, this seems to be virtually conceded by the appellants, as their brief states the fundamental question here, aside from the right to judgment on the counterclaim, to be whether the evidence "admitted and offered fairly establish that the validity of the title of Jackson, Wolcott, and Kerr was not free from reasonable doubt." In short, the case for rescission of the contract rests, not upon proof of a fraudulent purpose accomplished by intentional deceit, but solely upon the claim that the title conveyed to Knupp, though supposed to be good and so represented by defendants, was afterwards found to be seriously defective.

[1] The title in dispute is based upon a deed given in December, 1903, by the state board of education of North Carolina to one D. W. Morton, and an exhaustive argument is submitted, on the admitted and offered evidence, to show that this was not a marketable title. To the opposing argument is added the fact, whatever its probative value, that the present owners, who hold under the same title, accepted that title in 1910 with knowledge of the objections raised by Knupp, and testified in substance that they had since been in undisturbed possession of the property and that no adverse claim had been made against it. We deem it unnecessary to decide the question. For the matter in hand it may be assumed that Knupp did not get a good title, because the state board of education had not acquired a good title, and therefore could not give one to Morton. On that assumption Knupp could have refused the deed tendered him by defendants, and compelled a return of the money paid on signing the contract. In the two months intervening there was nothing to prevent him from making the fullest examination. It was his right to have a marketable title to the property he had contracted to purchase, and he was not bound to accept the deed sent him, unless it conveyed such a title. But in point of fact he did accept it, without protest or objection, and such acceptance implied admission by him that defendants had complied with the terms of their agreement.

During the following year there was no interference with his possession, and no attempt by other parties to assert a superior title to the property. Some question was raised when the 1907 notes were about to mature, but whatever purpose Knupp then had to repudiate the contract appears to have been abandoned, on the report or opinion of Moore, and the notes were paid without further objection. Assuming he was unaware at that time of the imperfections of title on which appellants now rely, and that they were not embraced in the reference to Moore, he did know of them, at least in a general way, when the 1908 notes were coming due, and he made demand for a rescission of the contract. Although this demand was met with immediate refusal, and steps were promptly taken to sell the lands for nonpayment of

these notes, he waited some two years before bringing a suit to rescind; and the suit then brought was apparently allowed to stand without effort to have it tried until it was dismissed under the rule for want of prosecution. The subsequent suit, which resulted in the decree under review, was not begun until six years and more after the alleged fraud was discovered, and upwards of eight years after the deed had been accepted. We do not say that this long delay was sufficient of itself to destroy the right of rescission, which may have existed when the deed was offered, or even two years later, when the asserted defects of title became known; but we do say in the circumstances here disclosed that it cast a burden upon the plaintiffs which they are not shown to have sustained. After the acceptance of a deed which the grantor has contracted to give, and after payment of a large part of the purchase price, there must be a time when the grantee will not be permitted to rescind the contract on the ground of defective title, but will be left to the remedy of an action for breach of warranty. In our opinion that time had come when this suit was commenced; and this view seems to be confirmed by the fact that, although eleven years had passed since the state board of education conveyed the lands to Morton, it does not appear that any attempt had been made by legal proceedings or otherwise to recover possession of the property under claim of a paramount title.

We are therefore persuaded that plaintiffs have failed to make out a case for equitable relief. The controlling principles of law are familiar, and reference to a few of the leading decisions will suffice, without resort to quotation. On the issue of fraud the decree below is supported by Southern Development Company v. Silva, 125 U. S. 247, 8 Sup. Ct. 881, 31 L. Ed. 678; Hennessey v. Woolworth, 128 U. S. 438, 9 Sup. Ct. 109, 32 L. Ed. 500; Lalone v. United States, 164 U. S. 255, 17 Sup. Ct. 74, 41 L. Ed. 425; Redwood v. Rogers, 105 Va. 155, 53 S. E. 6. It is equally supported on the issue of laches by Grymes v. Sanders, 93 U. S. 55, 62, 23 L. Ed. 798; Shapiro v. Goldberg, 192 U. S. 232, 24 Sup. Ct. 259, 48 L. Ed. 419; Max Meadows Co. v. Brady, 92 Va. 71, 78, 22 S. E. 845.

[2] We are also of opinion that no error was committed in awarding judgment in favor of Wolcott and Kerr on the unpaid notes, which they had taken up and became the owners of before this suit was brought. It appears plain to us that these notes constitute a "counterclaim arising out of the transaction which is the subject-matter of the suit," and rule 30 (201 Fed. v, 118 C. C. A. v) provides that such a counterclaim "must" be stated in the answer. Indeed, it may be doubted whether the defendants named would not have waived the right to recover on these notes, if they had not set them up in answer to the plaintiffs' bill. Portland Wood Pipe Co. v. Slick Bros. Const. Co. (D. C.) 222 Fed. 528, and cases cited. The District Court had jurisdiction of the subject-matter and of all the parties in interest, and its authority to determine the whole controversy seems not open to question.

Affirmed.