HOWARD v. LEETE et al.

(Circuit Court of Appeals, Sixth Circuit. January 7, 1919.)

No. 3143.

1. APPEAL AND ERROR ⊗⊃334(3)—WRIT OF ERROR TAKEN BY TRUSTEE—ABATEMENT BY DEATH.

Writ of error taken out by plaintiff, "D. R. Howard, trustee," *held* not taken by him as sole trustee so as to have been abated by his death, and not to be revived in the name of his personal administrator.

2. JUDGMENT ⊗⊃531—JUDGMENT AGAINST TRUSTEE—PERSONAL LIABILITY.

Where the decree did not run against plaintiff trustee in a representative capacity, he being styled therein "D. R. Howard, trustee," prima facie indicating the word "trustee" was merely descriptive, while the order for execution was directed against "D. R. Howard, trustee," he was personally liable.

3. EQUITY ⊗⊃39(4)—RELIEF—JUDGMENT ON NOTES SOUGHT TO BE CANCELED—JURISDICTION.

In suit by trustee to cancel promissory notes given for coal-mining property, and for relief from liability thereon, the District Court had jurisdiction, on finding for defendant holders of the notes, to render judgment against plaintiff trustee on the holders' counterclaim on the notes, since equity will retain jurisdiction of subject-matter properly acquired to do complete justice, though it involves determination of legal rights.

4. COURTS ⊗⊃311—FEDERAL COURT—DIVERSITY OF CITIZENSHIP.

District Court sitting in Kentucky *held* vested with jurisdiction over plaintiff, a trustee, and a citizen and resident of Ohio, suing to cancel notes given for the purchase price of coal-mining property, on the cross-suit of defendants, the holders of such notes, residing in and citizens of Virginia, to recover thereon against plaintiff trustee.

⊗⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. COURTS ⬅332—POWER OF SUPREME COURT—GENERAL EQUITY RULE.
    The Supreme Court of the United States has power to confer by general
equity rule No. 30 (118 C. C. A. v, 201 Fed. v) a right to relief on counter-
claim which the trial court has undoubted power to give on actual hear-
ing, and which it is its settled practice to give without its being affirma-
tively asked for.
6. COURTS ⬅347—EQUITY RULE—COUNTERCLAIM—SUIT TO CANCEL NOTES.
    In view of the policy disclosed by general equity rules Nos. 22, 23 (115
C. C. A. xxiv, 198 Fed. xxiv), under No. 30 (118 C. C. A. v, 201 Fed. v), as
to counterclaims, the District Court had jurisdiction to entertain defend-
ant holders' counterclaim on the notes sought to be canceled in suit by
plaintiff trustee, the purchaser of mining property, to rescind the purchase
and cancel the purchase-money notes.

Appeal from the District Court of the United States for the East-
ern District of Kentucky; Andrew M. J. Cochran, Judge.

Suit in equity by D. R. Howard, trustee, against R. H. Leete, Gallie
Friend, individually and as trustee, and others. From a decree for
Gallie Friend, as trustee, against plaintiff, the latter appeals. Affirmed.

Frank W. Cottle, of Cincinnati, Ohio, for appellant.
John F. Hager, of Ashland, Ky., for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit
Judges.

KNAPPEN, Circuit Judge. On September 26, 1914, appellant pur-
chased from the Mary Luck Coal Company its coal mine and mining
properties, real and personal, at the price of $31,500, for which he
gave, to the order of the coal company, his 21 negotiable promissory
notes, each for $1,500, with interest, to secure which a vendor's lien
was retained in the deed of conveyance of the coal properties. The
coal company was to pay all its debts existing as of October 1, 1914.
By agreement between appellant and the other interested parties, at
least 9 of the notes were delivered to Gallie Friend, as trustee, to se-
cure payment of indebtedness of the coal company. The latter's stock-
holders were to receive nothing on account of any of the notes until
the company's debts were paid. Later certain of the company's cred-
itors took proceedings in a state court of Kentucky for the appoint-
ment of a receiver over the coal properties, and for their subjection to
the payment of asserted indebtedness.

Thereupon appellant filed his bill in the court below, alleging his pur-
chase of the properties, their conveyance to him, and his consequent
possession of the same, and asserting that the receivership suit resulted
from the refusal of Friend, trustee, to apply the 9 notes in question, or
their proceeds, to the payment of the company's indebtedness, averring
appellant's readiness and willingness to pay into court the remainder
of the purchase price as it became due, and asking for decree requiring
the defendants (all of the individuals being stockholders of the coal
company) to interplead for the settlement of their conflicting claims
to the purchase money represented by appellant's notes, and for re-
straint meanwhile of the receivership proceeding.

Gallie Friend, individually and as trustee, and one other stockhold-
er, answered, admitting the purchase by appellant on the terms stated,
the conveyance to him of the coal properties, his possession thereunder,
the coal company's agreement to pay its debts existing as of October
1, 1914, and the delivery to Friend, trustee, of the nine notes to secure
such payment, but denying that the receivership proceedings were in-
stituted on account of debts which it was the duty of the coal company
to pay, or by reason of any failure of Friend, trustee, to perform his
obligations, and asserting that appellant had already defaulted in the
payment of about $6,000 of notes so far matured, and was attempting to
induce the discounting of his notes at about 50 per cent. of their face
value.

By counterclaim it was asked that appellant be required to pay into
the court's registry the amount of his matured notes, that his bill be
thereupon dismissed, and in default of such payment, or of payment of
his notes subsequently maturing, that judgment be entered in the trus-
tee's favor, and for disclosure by appellant of the names of those bene-
ficially interested in his trust. The counterclaim also asked that the
coal company's indebtedness be held to be in the amount asserted by
defendants, unless appellant put such question in issue. Upon the ma-
turing of further notes, an amended answer and counterclaim of the
same nature were filed as to them. This counterclaim was followed by
motion for judgment thereon. Appellant's motion to strike out the an-
swers and counterclaims was denied. The other defendants seem not
to have answered.

A few days after the filing of this bill, suit by another creditor was
brought against the coal company in the Kentucky state court. As
the result of these two creditors' suits (both for royalties under leases),
the coal properties in question passed into the hands of a receiver ap-
pointed by that court on February 25, 1915, about a month after the
filing of appellant's bill below. On June 13th following, appellant
made and had recorded a deed of reconveyance of the coal properties
from himself to the coal company. The coal properties were sold un-
der the state court receivership proceedings to satisfy judgments against
the coal company in the two cases named, at an unnamed date between
July 13, 1915, and May 20, 1916, at which date appellant filed in the
court below a new bill, in declared nature supplemental to the original
bill, averring the receivership proceedings just mentioned, the posses-
sion of the coal properties thereunder and the making and recording of
the reconveyance referred to; and asking that the contract of purchase
and sale of the coal properties be canceled and that the 19 unpaid notes
(2 notes had been paid) be delivered into court, canceled, and destroyed,
upon grounds which, so far as material, we summarize as follows:

First, that appellant was induced to take the conveyance of the coal
properties by certain material misrepresentations as to their character,
quantity, and value, made by the defendant B. P. Friend, the secretary
and former manager of the coal company, while acting, as alleged, for
the coal company and under authority from the other defendants to
negotiate the sale on their behalf; that by the agreement with said
Friend appellant was to and did hold the legal title to such property as

trustee, and as such was to convey the same under such terms and conditions, at such price above $31,500, and to such persons or corporation, as Friend should direct; appellant to pay to Friend, or under his direction, the proceeds of such resale, less expenses of operation, the balance, if any, due on the notes (which he alleged were made by him as such trustee), and reasonable compensation to appellant for his services as trustee; second, the company's agreement to pay all its debts existing on October 1, 1914, and representation by defendants Gallie Friend and another stockholder that such debts were small; third, the transfer and indorsement to Gallie Friend, trustee, for the purpose before stated, of appellant's 21 notes, in accordance with resolution of the company's directors; fourth, the carrying on of the business of the coal company after October 1, 1914, in the company's name and under the direction and management of B. P. Friend, and the payment from the proceeds of operation of the first two maturing of appellant's notes; and, fifth, the sale of the coal properties for liabilities of the company existing October 1, 1914.

The contract of purchase and sale was alleged to be broken by defendants' breach of their agreement to pay all liabilities of the company existing on or before October 1, 1914, and of their covenant to deliver possession of the properties free from liens or obligations of the company as of that date.

The defendants, other than B. P. Friend, answered, fully controverting all equities and merits alleged in the bill; denying generally and specifically all fraud and misrepresentation charged on their part, or that of the coal company, or on the part of B. P. Friend, so far as they had information and belief, specifically denying that the latter represented the company or its stockholders, other than himself, in the negotiations for the sale of the property, or that he made any misrepresentations while acting in such representative capacity; denying all knowledge and information of the alleged agreement relative to the nature of plaintiff's holding of the properties, and his agreement to sell and convey as directed by B. P. Friend, or of any agreement not embraced in the coal company's deed of conveyance to plaintiff; alleging unsuccessful attempts to induce plaintiff to pay his notes; denying any right on his part to rescind the contract of purchase; alleging that the execution sale was due entirely to his own fault, in his deliberate election not to pay royalties after October 1st. Defendants also asserted that plaintiff, in his holding of the properties, was a mere dummy for certain others, not parties to the suit, who were alleged to have full knowledge of all the existing facts and equities. There was prayer for affirmative relief substantially as contained in the answer and counterclaim to plaintiff's original bill.

Plaintiff's renewed motion to strike out the counterclaims was denied. His motion to dismiss his own bill without prejudice was granted, but without prejudice to the maintaining of the counterclaims. Plaintiff having failed to deny or reply to the answers and counterclaims, and it appearing that plaintiff had not paid the 19 notes in question, in whole or in part, there was interlocutory decree fixing the amount due thereon, with award of personal judgment in defendants'

favor, unless plaintiff should pay the amount into the registry of the court within a specified period. Plaintiff having failed to make payment, judgment was entered in favor of Gallie Friend, as trustee, against the plaintiff, for the amount so due and unpaid on the notes in question.

[1, 2] 1. The motion of appellees to dismiss the writ of error (which, under the act of September 6, 1916, we treat as an appeal), on the ground that it was taken by "D. R. Howard, as sole trustee," and so was abated by his death, and cannot be revived in the name of his personal administrator, must be denied. The notes were signed by "D. R. Howard, trustee," and the conveyance apparently ran to appellant under that designation, and without disclosure of his principal, if any. The decree below did not run against appellant in a representative capacity. He is styled therein "D. R. Howard, trustee," which prima facie indicates that the word "trustee' is merely descriptive. Moreover, the order for execution, while in favor of Gallie Friend "as trustee," is directed against "D. R. Howard, trustee," and the execution itself demands the collection of the judgment "from the estate of D. R. Howard, trustee," who was then still living. Under the applicable law appellant was personally liable upon the judgment. See Carroll's Ky. Stat. 1915, vol. 3, § 3720b, subsec. 20; Riordan v. Thornsbury, 178 Ky. 324, 198 S. W. 920; Taylor v. Davis, 110 U. S. 330, 4 Sup. Ct. 147, 28 L. Ed. 163. The writ of error was taken out by "D. R. Howard, trustee," and the suit was thus properly revived in the name of his personal representative.

[3] 2. Appellant denies the jurisdiction of the District Court to render judgment against him upon the counterclaim, because (a) defendants' cause of action was not the subject of counterclaim, and (b) the court below, sitting in Kentucky, had no jurisdiction over appellant, a citizen and resident of Ohio, at the suit of appellees, residing in and citizens of Virginia.

We see no merit in this contention. We assume, for the purposes of this case, that such judgment could not be rendered in a purely interpleader suit, where the plaintiff was merely seeking to pay a fund into court and to compel claimants thereto to litigate as between themselves a controversy with which he had no concern. Wakeman v. Kingsland, 46 N. J. Eq. 113, 18 Atl. 680. In such case the sole primary issue would be whether plaintiff was entitled to a decree that defendants interplead. If so, he would step out; if not, his bill would be dismissed. But such was not the situation at least under the new bill, which we identify as "supplemental," and by which, on a complete change of front, appellant sought cancellation of his notes and relief from all liability thereon. The sole ultimate issue, then, was whether or not he was bound to pay his notes. If so, it logically followed that their holders were entitled in some proceeding to enforce their payment. Long before the adoption of general equity rule No. 30 (201 Fed. v, 118 C. C. A. v), it was the established rule that a court of equity, which has properly acquired jurisdiction of the subject-matter for a necessary purpose, ordinarily should, for the purpose of putting an end to litigation, proceed to do final and complete justice between the parties,

even though this required it to determine purely legal rights that otherwise would not be within the range of its authority—provided such relief could as well be given there as by a proceeding at law. Tayloe v. Merchants' Fire Ins. Co., 9 How. 390, 404, 13 L. Ed. 187; Eames v. Home Ins. Co., 94 U. S. 621, 24 L. Ed. 298; Camp v. Boyd, 229 U. S. 530, 552, 33 Sup. Ct. 785, 57 L. Ed. 1317; Springfield Co. v. Barnard Co. (C. C. A. 8) 81 Fed. 261, 263–265, 26 C. C. A. 389.

The principles declared in these cases apply to the case before us. In Tayloe v. Insurance Co., under a bill in equity involving the establishment of a contract of fire insurance, the plaintiff was awarded recovery for the fire loss occurring after the contract was found to have been completed. Eames v. Insurance Co. is of a similar nature. In Camp v. Boyd, where suit was brought to restrain an ejectment suit, it was said (229 U. S. 551, 33 Sup. Ct. 793, 57 L. Ed. 1317) that the appellees therein, if driven to invoke the aid of equity because they had an equitable and not a legal title to two of the three parcels involved, "were fairly entitled to bring the entire controversy into the court of equity, so that it might be adjudicated in a single suit." Neither of these cases involved the question of counterclaim. In Springfield Co. v. Barnard Co. the defendant to a bill for the foreclosure of a mechanic's lien was held entitled to maintain cross-bill for damages to its mill, which ordinarily would be the subject of an action at law. Further illustrations of the general rule are found in Pease v. Rathbun-Jones Co., 243 U. S. 273, 279, 37 Sup. Ct. 283, 61 L. Ed. 715, Ann. Cas. 1918C, 1147, and Cincinnati, etc., Traction Co. v. Amer. Bridge Co. (C. C. A. 6) 202 Fed. 184, 186, 120 C. C. A. 398.

Insurance Co. v. Dick, 117 Mich. 518, 76 N. W. 9, 44 L. R. A. 846, and New Era Association v. MacTavish, 133 Mich. 68, 94 N. W. 599, are directly in point upon the broad principle that a court of equity has power to decree payment of a debt under circumstances involved here. In those cases the insurers filed bills in equity to cancel policies of life insurance for alleged fraud in their procurement, and to restrain actions at law thereon. Defendants, by answer, asked judgment upon the policies under a state practice which permitted a defendant to claim by answer the benefit of cross-bill whenever, by established chancery practice, a cross-bill would lie; the usual equity practice otherwise prevailing and the distinction between law and equity being sharply defined. Fraud not being established, the defendants had decrees for the amounts of the policies apparently as matter of course, and doubtless by the simple application of the rule that a court of equity "will not do justice by halves." In the instant case there is no room for doubt that, had the case gone to final hearing upon the supplemental bill, and had the court then held that appellant was not entitled to rescind or to have his notes canceled, it could and should have rendered judgment for repayment to parties before the court shown to be entitled thereto. Under such circumstances, to have remitted the defendants to another suit would have been an idle ceremony.

[4] That the court had jurisdiction over the parties is equally plain. It is a mistake to say that this jurisdiction was acquired merely because the original action was local. Embracing, as it did, the right to rescind

a purchase of real estate, the action was, even under the supplemental bill, a local action in a proper enough sense, whether or not the second bill was rightly labeled "supplemental." But there was all the time diversity of citizenship of the parties, and appellant could not be allowed to question a jurisdiction he had himself invoked. His inability to get the counterclaim to the original bill of interpleader dismissed did not alter the situation. The difficulty was that by that time he wished other and wholy inconsistent relief. The fact that he was not a resident of Kentucky, thus making suit at law against him in that state difficult, if not impracticable, would have furnished additional reason for the exercise of complete jurisdiction in the equity suit. Caflisch v. Humble (C. C. A. 6), 251 Fed. 1, 5, 163 C. C. A. 251. And see Springfield Co. v. Barnard Co., supra, 81 Fed. at pages 264 and 265, 26 C. C. A. 389.

[5, 6] Is the situation altered by the fact that plaintiff did not go to hearing on his bill? General equity rule No. 30 expressly provides that:

"The answer must state in short and simple form any counterclaim arising out of the transaction which is the subject-matter of the suit, and may, without cross-bill, set out any set-off or counterclaim against the plaintiff which might be the subject of an independent suit in equity against him, and such set-off or counterclaim, so set up, shall have the same effect as a cross-suit, so as to enable the court to pronounce a final judgment in the same suit on both the original and cross claims."

The second clause of this paragraph, which permits the pleading of "any set-off or counterclaim * * * which might be the subject of an independent suit in equity, * * *" has been the subject of differing constructions. But we are not concerned with this clause, for the appellees' demand for judgment against appellant on the notes is based upon the first clause. The term "counterclaim," as there used, is broad enough to embrace any counterdemand; that is to say, any demand directly opposed to plaintiff's demand. As used in the first clause, such "counterclaim" is not required to be capable of being "the subject of an independent suit in equity," but only that it be one "arising out of the transaction which is the subject-matter of the suit." To our minds there can be no doubt of the power of the Supreme Court to confer upon a defendant, by general rule, a right to relief which the court has undoubted power to give on actual hearing, and which, indeed, it is its settled practice to give without its being affirmatively asked for. See Boothe v. Armstrong, 76 Conn. 530, 57 Atl. 173.

Nothing could be more directly opposed to plaintiff's demand for the cancellation of his notes than defendants' demand for judgment thereon. That the latter demand arose "out of the transaction which is the subject-matter of the suit" needs no argument; and, as already said, ultimate judgment on the notes was the natural and logical outcome of a refusal to cancel them. A construction of the first clause as relating only to demands "which might be the subject of an independent suit in equity" cannot be accepted. To do so would not only require the interpolation bodily of a clause in terms made applicable only

to the second branch of the rule, but would ignore the existing equity practice. The object of the rule was to simplify and extend, not to curtail, an existing practice designed to prevent multiplicity of suits.

The cases of Caflisch v. Humble, supra, and Knupp v. Bell (C. C. A. 4) 243 Fed. 157, 156 C. C. A. 23, are in point. In the Caflisch Case we held that the defendant's claim for damages for breach of a contract of purchase and sale of lumber, on account of which plaintiff was seeking to establish an equitable lien, was a counterclaim arising out of the transaction which was the subject-matter of the suit, and, indeed, one which the defendant was obliged to set up or waive. True, such demand for damages might be said to be germane to the accounting and so of an equitable nature, but the decision invoked the proposition that, "whenever practicable to do so, a court of justice should do justice completely and not by halves." Knupp v. Bell, however, is on all fours with the instant case. There, in a suit to rescind a contract for the purchase of land, judgment for defendants (the vendors) for the amount of the purchase-money notes (on denial of relief to plaintiff) was affirmed, as on a "counterclaim arising out of the transaction which is the subject-matter of the suit"; doubt being also expressed whether defendants would not have waived such right of recovery, had it not been set up in the answer.

In the instant case we are not called upon to decide whether, in view of the word "must" in the first clause, as distinguished from the word "may" in the second clause, appellees by failing to ask judgment on the notes would have lost the right to sue upon them elsewhere, after a decision in the equity suit denying appellant any relief; for it is clear that the words "and such * * * counterclaim, so set up, shall have the same effect as a cross suit, so as to enable the court to pronounce a final judgment in the same suit both on the original and cross claims," apply to "any counterclaim arising out of the transaction which is the subject-matter of the suit"; and we think that to deny to appellees at least the absolute right to present in the equity suit their claim to affirmative relief would violate the spirit and intent of the rule, construed in the light of the policy disclosed by rules 22 and 23 (198 Fed. xxiv, 115 C. C. A. xxiv), as well as by recent legislation designed to simplify practice.

It is not, and could not well be, urged that if appellees were entitled to make the counterclaim there was lack of jurisdiction to render judgment against appellant in some amount. There was thus no error in refusing to dismiss the counterclaim to the second bill, and, as the case finally shaped itself, there was no reversible error, to say the least, in the like refusal as to the first bill.

3. The criticism that it does not appear that Gallie Friend, as trustee, owned or held more than 9 of plaintiff's notes is not, to our minds, well taken. The supplemental bill alleges, not only that by the terms of the contract all of the 21 notes *were to be* transferred to Friend as trustee for the stockholders, but that upon the delivery of the conveyance to appellant, on his execution of the 21 notes, "that same and all of them *were* duly indorsed and received by Gallie Friend as trustee, as aforesaid, to hold same in accordance with the resolutions above

referred to." We find nothing in the answers which we think necessarily inconsistent with this allegation, so far as it concerns the right of Friend, *as trustee,* to be awarded recovery on the notes.

The decree of the District Court should be affirmed, with costs to appellees. But, while we see no reason to apprehend danger that appellant's estate will be twice subjected to double liability on any of the notes, yet, to eliminate possibility thereof, the affirmance will be with the proviso that the District Court take such action, by amendment of its decree or otherwise, as that the moneys paid or collected by virtue of the decree be paid into court, and thereafter paid out only to the extent that appellant's notes for which recovery has been had are duly surrendered to the registrar of the court, for delivery to appellant's representative or representatives, provided such action is not forbidden or made unnecessary by a state practice requiring the actual filing of the notes before judgment, as basis thereof, and an effective cancellation resulting from their merger in the judgment.