## PUGET SOUND POWER & LIGHT CO. v. CITY OF SEATTLE et al.

(District Court, W. D. Washington, N. D.   January 19, 1922.)

No. 235.

1. **Specific performance ⬥⟹122—Partial performance pending suit not ground for dismissal.**

Where defendant was in default under a continuing contract when suit for specific performance was brought, subsequent compliance with the contract pending the suit is not a ground for dismissal, but the court will proceed to a final determination of the rights of the parties.

2. **Municipal corporations ⬥⟹951—Contract for sinking fund to pay bonds for purchase of street railway gave bondholders claim on revenues.**

A provision of the contract by which defendant city purchased a street railway system and issued bonds in payment, that it should pay into a fund from the gross receipts of its operation a sum sufficient to meet the interest on the bonds and to pay a stated per cent. of the principal each year, *held* valid, and to give the holder of the bonds a claim on the gross revenue from operation prior in right to that of defendant for operating and maintenance cost.

In Equity. Suit by the Puget Sound Power & Light Company against the City of Seattle and others. Decree for complainant.

James B. Howe, Hugh A. Tait, and John H. Powell, all of Seattle, Wash., for complainant.

Walter F. Meier, Corp. Counsel, Thomas J. L. Kennedy and Charles T. Donworth, Assts. Corp. Counsel, and Robert H. Evans, Sp. Asst. Corp. Counsel, all of Seattle, Wash., for defendants.

CUSHMAN, District Judge. The questions at issue are, in the main, concluded by the decision of the Supreme Court of the state of Washington in Twichell v. Seattle, 106 Wash. 32, 179 Pac. 127, and that of this court herein upon motion to dismiss the bill. 271 Fed. 958. A reconsideration of that ruling by this court has only served to convince me that, if this court's former decision be not well reasoned, the faults therein are rather more favorable than opposed to respondents. Nor do I find that the conclusion now reached is at variance with the decision of Judge Neterer in the suit of the 14 taxpayers against the city. Puget Sound Power & Light Co. v. S. B. Asia et al., decided March 12, 1921, affirmed December 5, 1921 (C. C. A.) 277 Fed. 1. In the latter decision it is said:

" * * * When thus measured by the facts alleged, there is nothing in the bill, other than the charge that the appellees brought suit in the state court against the city and its officers to enjoin action which they alleged would violate the terms of the contract, and that they assert and insist that the position which they took in that suit is sustained by the language of the contract. We find no principle of equity upon which it can be held that an injunction should issue upon such a showing of facts. It is not a suit to remove a cloud upon the title of the appellant, as was the case in Thompson v. Emmett Irrigation District, 227 Fed. 560, 142 C. C. A. 192. The appellant's title to its bonds is in no way assailed. The facts alleged are not sufficient to bring the case within the equitable jurisdiction to enjoin vexatious litigation. The rights of the appellees herein have not been adjudicated in prior proceedings to which they were parties, nor are they pursuing a

⬥⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

course which will necessarily result in a multiplicity of suits. Nor has equity jurisdiction on the ground that the acts and assertions of the appellees constitute slander of property."

As quoted above, the Circuit Court of Appeals says:

"The appellant's title to its bonds is in no way assailed."

In another way the Supreme Court of the state has said the same:

"Whether or not the ordinance and bonds provide for a preference in favor of the bonds and interest out of the gross revenues of the system is unimportant to the integrity of the obligations. * * *" Twichell v. Seattle, 106 Wash. 32, at page 49, 179 Pac. 127, at page 130.

The present being a suit for specific performance, it follows (with the proper parties before the court) that there necessarily is involved the removal of any cloud incidental to the denial of the right to specific performance. While there is no cloud upon complainant's title to its bonds, viewed apart from the security for their payment, yet the denial by defendants of any right of complainant in the gross income from its former railway property or the special fund arising therefrom is a cloud upon the only thing which gives the bonds value, the sole security for their payment. The denial of the priority or superiority of its right thereto over the city's right, on account of the cost to it of operation and maintenance, is only different in degree. Eidemiller v. Tacoma, 14 Wash. 376, 385, 44 Pac. 877.

In the case of Twichell v. Seattle, 106 Wash. 32, 179 Pac. 127, it was contended by the city that the provision that the gross revenue should first be applied to the payment of the principal and interest of the bonds was the creation of a debt for the purchase which, under the charter, required a vote of the people of the city to authorize it. Complainant's right to the gross revenue and in the special fund, into which it was provided the gross revenue, to certain amounts, should be paid, are determined in the Twichell Case, particularly at page 49 et seq. of the report in 106 Wash., at page 130 of 179 Pac. There is no doubt that the court there decided that there was, by the purchase as arranged, "no debt created," in the sense in which the words are used in the charter. This is shown by the following:

The court, having reviewed and sanctioned Griffin v. Tacoma, 49 Wash. 524, 95 Pac. 1107, Scott v. Tacoma, 81 Wash. 178, 142 Pac. 467, Schooley v. Chehalis, 84 Wash. 667, 147 Pac. 410, and Faulkner v. Seattle, 19 Wash. 320, 53 Pac. 365, quotes from the latter decision as follows:

"It is conceded that bonds issued only against a fund to be created from the revenues of the system would not create a debt against the city. Winston v. Spokane, 12 Wash. 524, 41 Pac. 888. But it is contended in this case that under the allegations of the complaint a debt would be created, because the city proposes to bind itself to devote 75 per cent. of the gross receipts to the payment of the bonds, and that it further appears that the remaining 25 per cent. would not be sufficient to cover the operating expenses of the system. But, conceding this to be true, we are of the opinion that it does not appear that any debt would be created by the contract." 106 Wash. at page 52, 179 Pac. at page 131.

Following the foregoing quotation the court says:

"The statutes and decisions above referred to recognize a marked distinction between the creation of a debt and the creation of a condition upon which a debt might arise. In this case we have to do only with the question of the power of the city, not matters of propriety or policy. Neither the complaints nor the ordinance advise one what proportion of the anticipated gross revenues is considered sufficient to meet the obligations for the payment of the traction company's property, and the consequent remainder for expenses of operation and maintenance. By the ordinance, one is simply told that, in the judgment of the city council, the gross revenues will be sufficient for all such purposes. In exercising that judgment, the city council exercises a legislative power over which the courts have no control. Ewing v. Seattle, 55 Wash. 229, 104 Pac. 259. We are satisfied the proposed plan and bonds will not create any indebtedness against the city and that the city council has authority to consummate the purchase without the sanction of the qualified voters." 106 Wash. at pages 52 and 53, 179 Pac. at page 131.

No citation of authority is needed in support of the proposition that this court is bound by the foregoing construction of the city charter and its effect upon complainant's contract with the city.

[1] Counsel for the defendants have contended that, the city having paid the last installment of interest, the court should refuse to further consider and determine complainant's rights under its contract or decree specific performance of it. The time available to the court precludes any elaboration of this question and the reasons which have influenced the court in its decision.

Counsel for defendants do not affirm or deny that the city disputes the priority of complainant's claim upon the gross current receipts to the amount of principal and interest next falling due over the city's for cost of operation and maintenance. Counsel in effect say that, while the city was in default at the commencement of this suit, yet that default having been met pending the suit by payment into the special fund and payment of all due interest, the court should dismiss this suit and not prejudice the city's credit by a further finding of default upon the part of the city.

The city having defaulted before the commencement of the suit, its institution was thereby justified. The questions for determination then were the extent and nature of complainant's rights in the gross revenues and special fund, and the city's duty to pay into the latter sufficient of the former to meet the interest about to fall due. In order to determine whether the city was in default in not paying any part of the gross revenue into the special fund, it was necessary to determine not only whether the payment was required 30 days before an interest due date, but also whether any part of the gross revenue collected, including that still held unexpended by the city, was money properly payable into the special fund; that is, money upon which the complainant had a claim prior to that of the city for cost of maintenance and operation. If, for any reason, such priority of right did not exist, then there was no default, and there could be none because of its not having been paid into such fund. There having been a default, and the court having assumed jurisdiction, it is right and proper that there be a complete and final determination of the rights of the parties under the contract, at least to the extent of determining their

respective rights in and to the gross revenue and the special fund arising therefrom. 10 R. C. L. p. 370, par. 210; 22 Cyc. p. 93, subd. 8; Camp v. Boyd, 229 U. S. 530, 551, 33 Sup. Ct. 785, 57 L. Ed. 1317; McGowan v. Parrish, 237 U. S. 285, 296, 35 Sup. Ct. 543, 59 L. Ed. 955; Hopkins v. Grimshaw, 165 U. S. 342, 358, 17 Sup. Ct. 401, 41 L. Ed. 739; Continental Trust Co. v. Tallassee Falls Mfg. Co. (D. C.) 222 Fed. 694, 712; Maurel v. Smith (D. C.) 220 Fed. 195, 202; Howard v. Leete, 257 Fed. 918, 922, 169 C. C. A. 68.

[2] The question of complainant's claim upon the gross current income for the payment of the installments of principal and interest next falling due is not only indirectly involved, because of the necessity of its consideration in order to determine the question of default upon failing to pay into the special fund, 30 days prior to the due date, but it would appear to be directly put in issue by any refusal of the city to disclaim, confess, or deny the priority of complainant's right to such gross revenue and fund. Complainant, by its bill, asserts its priority of right to the gross revenue, and by paragraph VIII of the bill of complaint in effect pleads that by the decision in the Twichell Case, supra, it was determined that, to preserve complainant's priority right in the gross revenue, the city would, if such revenue were insufficient to meet all charges, "be compelled to pay the cost of maintenance and operation by taxation or from other sources than the revenue of the property." The effect of the bill, containing, as it does, this paragraph, is to plead the Twichell Case as res adjudicata of this question. Upon complainant's now urging that its right has been so established, defendants say:

"It is unnecessary for defendants to deny or admit the soundness of plaintiff's argument on this point. The city has received a certain amount of gross revenues; it is making all payments therefrom when due, and evinces every intention to continue doing so. Under such circumstances, the court should not assume to determine a matter unnecessary to a proper disposition of the cause."

On the part of the defendants, this amounts to their construction of their answer as in the nature of a plea in abatement upon this issue. In part the prayer of the complaint is:

"That the defendants may, if they can, show why the plaintiff should not have the relief herein prayed, and make full disclosure and discovery of all the matters aforesaid and, according to the best and utmost of their knowledge, remembrance, information, and belief, full, true, direct, and perfect answer make to the matters in this bill of complaint hereinbefore stated. * * *"

The court considers the answer as a denial of complainant's asserted rights to the gross income, and that it is the city's purpose to dispute such right, notwithstanding the decision in the Twichell Case, and that the full consideration and determination of complainant's rights in the foregoing particulars is not premature, that such consideration and determination are necessary to the proper disposition of the cause, and that, upon such consideration, the court's determination should be and is in favor of the complainant. It is said by the Circuit Court of Appeals in Puget Sound Power & Light Co. v. S. B. Asia et al., supra:

"There is no allegation in the amended bill that the appellees have used coercion, or have resorted to fraud or the corrupt use of means. All that they are charged with is their effort, by the use of legal means, to compel action by the city in accordance with their contention as to the true meaning of the contract. It is true that they are charged with knowledge of the decision of the Supreme Court in the Twichell Case, but it is not to be assumed that they *expect the city and its officers, or the state court, to act in defiance of the final judgment of the Supreme Court of the state.*"

Unquestionably the foregoing assumption was fully warranted by the state of the record then before the Circuit Court of Appeals; but it has been said by the state court, upon overruling the city's demurrer to the complaint of the 14 taxpayers (S. B. Asia et al. v. City of Seattle et al.), that being the suit, the parties in which were attacked by the bill held properly dismissed in the opinion of the Circuit Court of Appeals above cited:

"* * * It may be that if the gross revenues are insufficient to meet the expense of operation, and if the city cannot transfer from the general fund for this purpose, the system cannot operate, and I can conceive this condition could exist without invalidating the utility bonds. The holders of the bonds are entitled to the revenues. That is all they are entitled to. * * * This complaint shows that all of the revenues are required to pay the interest and installments of interest and principal on the bonds, and alleges that, in the absence of a ratification by the people, the city has not the power to use for the purpose of operation any money, excepting from the revenues of the system, all of which are pledged to the payment of the bonds. It is conceded, as I understand the matter, that the cost of operation must be paid from the revenues of the system; but it is contended by the city that, the revenues from the operation being insufficient, the city has the power to transfer from the general fund, as a temporary loan, funds for the purpose of paying the cost of operation. I use the words 'temporary loan,' *for it is conceded by the city that it could not divert funds from the general fund for this purpose and that any transfer other than a loan would be a diversion.*" (Italics those of this court.)

It would therefore appear that the assumption that the city and its officers will abide by the interpretation of the Twichell Case, which this court has adopted, no longer obtains.

One point which occurs to the court has not been argued or considered. It may be put best in the form of a question:

After the payment from the gross revenue of the yearly installments of principal and interest, is the remaining gross revenue entirely freed from any claim on the part of complainant, should there by any possibility, be insufficient revenue collected, after such payment and before such next or future principal and interest due date, to pay the installments then falling due?

The question may, in view of the current receipts, appear fanciful; but I have put it that there may hereafter be no question that it was meant to be determined herein.

Complainant's proposed form of decree will be entered, save and except that paragraph VI will be made to require 20 days', instead of 5 days', notice. It appears to the court, also, that a further change should be made in this paragraph; not having been argued, it will not be ordered, but the court will suggest it to counsel upon the presentation of the decree.