JOHN BIGELOW AND MARIA, HIS WIFE, *v*. WILLIAM BARR AND
OTHERS.

The acquiesence of a female devisee in the construction of the will, given by
her brother-in-law, upon the death of her husband and child, does not
conclude her, if it be an incorrect construction unfavorable to herself, and
predicated upon no new and valuable consideration.

THIS was a bill in chancery, to establish an equitable life estate
in the complainant, Maria Bigelow; and was reserved from the
county of Hamilton.

William Barr, Sen., died in May, 1816, having made his last
will, devising one hundred and sixty acres of land near Cincin-
nati, to the defendants, William Barr, James Keys, and John B.
Ennes, his executors, upon the following trusts : " *First*. For the
use of my son, John M. Barr, during his natural life, but never-
theless to permit and suffer my son, John M. Barr, to hold, use,
occupy, possess, and enjoy the same, and to receive and take the
rents and profits thereof, during his natural life. And in case my
said son, John M. Barr, should die, leaving a legitimate child, or chil-
dren, then also in trust, for Maria Barr, wife of the said John M.
Barr, in case she survive him during 'her natural life, for the pur-
pose of maintaining herself, and her child, or children, and edu-
cating the said children ; but nevertheless to permit and suffer
the said Maria Barr to hold, use, occupy, and enjoy the said farm,
and to receive the profits during her natural life. And upon the
decease of the said Maria Barr, wife of the said John M. Barr, in
case he survive, if not, then upon the decease of John M. Barr, I
do further give and devise the remainder of my estate, in said
farm, to him or her, or his or *her heirs forever. But if he [359
have two or more children, then I give and devise the said farm
unto such children, and their heirs, to be equally divided between
them. But should my son, John M. Barr, die without having any
issue of his body, then, and in that case, I give and devise the re-
mainder of my estate in said farm, unto my said sons-in-law, Will-
iam Barr, James Keys, and John B. Ennes and their heirs for-
ever. And if the present wife of my son, John M. Barr, should sur-
vive him, dying without bearing any legitimate issue, then I di-
rect my said sons-in-law, their executors and administrators, to

pay, or cause to be paid, unto her yearly, and every year, during her widowhood, the sum of two hundred dollars. And if, during her widowhood, she should again be lawfully married, then I further direct my said sons-in-law to pay her the sum of one thousand dollars," etc.

John M. Barr died in August, 1820, leaving his wife Maria, and one child. In November, 1821, the child died, leaving the said Maria, wife of John M. Barr, who intermarried with the complainant, John Bigelow, in October, 1824. In the lifetime of John M. Barr, the defendant, William Barr, at his request, leased the premises for several years. The tenant, in possession, in the year 1827, attorned to the complainants. The defendants prosecuted a suit of forcible detainer, and recovered judgment, which is still pending on error. The bill charged that the defendant, William Barr, claims the premises, by virtue of some pretended agreement, to accept the two hundred dollars annuity, instead of the life estate of the complainant, Maria Bigelow; that she never made such agreement, and prays for an injunction, account, etc.

The defendant, William Barr, admitted in his answer the material facts charged in the bill, but set up a verbal agreement made on the death of the child of John M. Barr, between the complainant Maria, then unmarried, and the defendant, by which she agreed to receive the annuity of two hundred dollars per annum, during her widowhood, and one thousand dollars upon her remarriage, in satisfaction of her claims under the will. That under this agreement he, in his own behalf and in behalf of the other executors, took possession of the premises, as their own property, in 360] the latter *part of the year 1821, with the consent and approbation of the complainant Maria. That the defendant Keys, being in failing circumstances, on December 28, 1821, gave the said Maria a mortgage upon the premises to secure the payment of his third of the annuity, and of the one thousand dollars upon her remarriage; that she accepted this mortgage, and in 1826 the complainants prosecuted this mortgage and recovered a judgment thereon. That the annuity of two hundred dollars was paid during the widowhood of the complainant Maria, and also since her intermarriage, principally in rents which were received by the complainants, under the said agreement, until 1826. The defendants, Keys and Ennes, are embarrassed; but he, William Barr, is willing, and offers to pay up the thousand dollars, upon a

proper release being made by the complainants. That he has kept no accurate account of the rents or moneys paid to the complainants, as the tenants often paid the rents directly to the complainants; but alleges that the complainants were fully paid to the amount of the annuity until the year 1826 or 1827. That in 1827 the complainants, by collusion, procured the tenants in possession to attorn to them, etc.

The testimony taken in the case showed that the child of John M. Barr and of the complainant Maria, died in November, 1821, and did not establish an independent parol agreement as alleged in the answer. It only made out an acquiescence of the complainant Maria, in the construction put upon the will by her three brothers-in-law.

HAMMOND, for complainant, maintained that the will created:

1. A trust for John M. Barr during life.

2. In case John M. Barr die, leaving a child and his wife, then a trust for Mrs. Barr during her life, to maintain herself and child.

3. If John M. Barr leave issue, then upon the death of himself and wife, to such issue.

4. If John M. Barr die without issue, then the remainder of the devised estate to William Barr, J. F. Keys, *and J. B. En- [361 nes, and if he die without issue, leaving his wife a devise of two hundred dollars per annum to the widow during her widowhood, and one thousand dollars upon her marriage.

As the facts occurred, the complainants insist, that as John M. Barr died, leaving issue, the trust creating a life estate in the wife became vested and absolute. As *cestui que trust* for life, she is entitled to the possession and occupancy of the devised premises, by the very terms of the will. And this right is not affected by the subsequent death of the child.

With respect to the attempt to hold the estate, upon a contract with Maria Barr, there is no proof whatever sufficient to sustain it. It is without certainty, and without consideration, and never has been executed, or offered to be executed, by the defendant.

The mortgage from J. F. Keys conveys no title. Upon the death of John M. Barr, the devise so took effect as to vest an estate for life in Maria Barr, the remainder in fee in the child. This was, in the child, a vested remainder, and under section 1 of

329

our statute of descents, vol. xxii. 133, clause 4, passed to the brothers and sisters of the devisee, or donor.

The claim of William Barr, the defendant, is unfounded, perverse, and vexatious. The judgment, in forcible detainer, being founded on the technical doctrine of landlord and tenant, ought not to be sustained. The plaintiff, in that judgment, had no right to the possession against Bigelow. He ought to be enjoined and compelled to pay costs. He ought, also, to account for the rents and profits, and for waste.

N. WRIGHT, for respondent:

I contend that the facts show a construction given to this will, and settled between the parties, which the court will not now disturb.

The point of doubt in the construction is this: the will gives the rents and profits to Maria Barr (in the case as it has happened), for the maintenance of herself and child, and the education of the child.

362] *It is a rule in the construction of wills, that, if a bequest is made to one with a *request* or *recommendation*, that it be applied to this or that purpose, or for the benefit of this or that person, where the subject and the object are pointed out, that it amounts to a trust for that object, and is limited to the purpose for which it is given; and when that object is accomplished, the residue goes to subsequent bequests, or results to the heir for want of them.

In Robinson v. Taylor, Lord Thurlow says, "when property is given for specific purposes in trust, nothing more is subject than those purposes require." 1 Ves. jr. 44.

So Lord Hardwicke, "the general rule, that if bounds are devised for a particular purpose, what remains after that purpose is answered results has several exceptions." Hill v. Bishop, 2 London, 1 Atk. 619.

So Lord Eldon : " It is not universally true, that the expression of a purpose for which even a devise of land is made, confines and limits the devise to the purpose so expressed. When the devise is something beneficial to the devisee, the presumption is stronger that the benefit specified, is the only benefit he is to derive." Walton v. Walton, 14 Ves. jr. 322.

Brown v. Lasaneajar seems to have been finally disposed of in part by consent; but it appears to have been understood, on all

sides, that this language in a will, "I give to H. S. seven thousand pounds, the better to enable him to provide for his younger children," creates a trust for those younger children. 4 Ves. 498.

So, "I give certain goods to my wife, desiring her to provide for my daughter," creates a trust for the daughter. Pushman *v.* Felliter, 3 Ves. 7.

And there are many similar cases. 18 Ves. 41.

To apply these principles to Barr's will: the rents and profits are given to Maria, for a distinct and specific purpose, the support of herself and child, importing some benefit to herself, and thereby restricting it to the particular benefit specified, that is, the joint support of herself and child; when this object is accomplished, the bequest ends, unless by some implication it can be continued for her separate support. Is there any such implication in the will? I think not; but directly contrary. A separate provision is made for her *in money, clearly distinguishing between [363 the joint support of herself and child, and the individual support of herself.

It is plainly the intent of this will that the land in question shall remain in the family of the testator; it is given in various forms, for the benefit of J. M. and Maria Barr, and their children; and then to the executors, who are children, or represent children, of the testator. If this devise vested in the child, so as to pass to its heirs in the line of the testator, under our statute, it passes entirely out of the family of the testator. If, on the contrary, it did not vest till the death of the parents, then it goes to the executors by the will, they being chargeable with the annuity and marriage portion of Maria, which is clearly the spirit of the will. In this way the expectancy of the estate ceasing to which the intermediate rents and profits were naturally connected, those rents and profits would naturally cease, leaving her to the gross sums provided for her, and the fee to the executors, either by the words of the will or the implication arising from the charge of the money. The residuary clause of the will is to the executors.

Without going into the intricate law on the subject of executory devises and contingent remainders, connected with the latter of the foregoing suggestions, there is at least enough to show that the construction given by the parties is the most conformable to the manifest wishes and design of the testator.

Independent of the conduct of the parties, I contend that the

right to the use of the land, during the life of Maria, ended with the death of the child, for whose support it was given; the child had clearly no interest *in possession* during the mother's life, other than the trust interest in the use in conjunction with the mother, and this use is not for the survivor of them, or either of them severally.

But whether I am right in this position or not, I contend that the parties have settled this matter among themselves, and it should not now be disturbed.

This may be considered, in the light of an agreement, for which there is sufficient consideration, and on which the defendant acted for several years, Maria acquiescing therein, and receiving the consideration, which was the annuity.

**364]** *Or it may be considered in the light of a construction given to the will, by the parties, which ought not to be disturbed in equity.

After the parties have made their arrangements, proceeded on their own notions of right, and the defendant has been suffered to proceed under that arrangement for five or six years, keeping, of course, no account of the rents, and unable to settle the account on any other ground than that of the arrangement, after securities have been taken for the money due on that arrangement, and judgment actually rendered on that security, which stands in full force and within the power of the complainants to collect, at any time, will the parties be allowed, without a cause, to disturb such an arrangement? After receiving the benefit of it for that period, when it was most beneficial, will they be allowed to call on the party, treating it as a nullity?

When parties have given their own construction to an uncertain instrument, perhaps more in conformity with the real intention of the maker than the strict letter of the law could give, equity will leave them to their own construction. It is evident, from the reading of this will, that the particular state of facts which has happened, was not in the contemplation of the testator. The construction, therefore, must be left to inference, and it is a case peculiarly suitable for adjustment among the parties themselves.

On the question of account and costs, under the circumstances of this case, an account can never be claimed. Complainants have got more than the lands were worth, but it is their fault that we can not show them the items.

The costs in the detainer case arose from the default of the complainants, as is evident from looking into the record of that case. When we had been long in possession, under the arrangement acquiesced in even by Bigelow himself after marriage, the treachery of our own tenant is used to take from us that possession. The man who came in under our tenant owes us allegiance, and violates his contract and his faith, if he does not restore to us the possession. Equity will never so far forget the respect due to good order and good faith as to countenance this sort of scrambling for possession. Let the man who claims possession against us claim it by law, *and not by corrupting our tenants. Salyards and [365 Peterson, the defendants in the detainer suit, had no connection with Bigelow, so far as we had right to know, nor could they lawfully have, coming in under our tenant. The costs in that suit are for their own wrong, in refusing the possession to us, from whom they had received it. If Bigelow has become responsible for them, he stands merely as the indorser for a wrong-doer, and answerable for his torts. 3 Ohio, 527.

In Barr *v.* Hatch, where this court gave relief against judgment, in ejectment, against a clear equity, they still charged the complainant with all the costs at law, and half of these in chancery.

Opinion of the court, by Judge BRUSH:

The object of the bill is to establish the right of the wife, Maria Bigelow, to the use and possession of a farm of one hundred and sixty acres of land, lying in Hamilton county, by virtue of the will of William Barr, Sen., deceased, for and during her natural life; and to enjoin further proceeding at law upon a judgment in forcible detainer obtained against the tenants of complainants. The clause in the will relied upon reads thus : " And in case my said son, John M. Barr, should die, leaving a legitimate child or children, then also in trust for Maria Barr, wife of the said John M. Barr, in case she survive him, during her natural life, for the purpose of maintaining herself and the child or children, and educating the said children ; but nevertheless to permit and suffer the said Maria Barr, wife of the said John M. Barr, to hold, use, occupy, and enjoy the said farm, and to receive and take the rents and profits thereof during her natural life." The said John M. Barr, former husband of complainant, Maria, died August, 1820, leaving said Maria and a daughter, the legitimate issue of both ;

and thereupon, the estate, thus limited and declared in her favor, became and was absolutely vested in her, for and during her natural life. But it is said this estate, thus expressly devised to complainant Maria for life, was nevertheless subject to be defeated by the death of the child; as thereby the object and purpose of the de-366] vise fails or is accomplished. And as the child died in *No- vember, 1821, about one year and three months after her father, the estate thereupon was defeated, and, by another clause in the will, passed to the defendants, J. Keys, J. B. Ennes, and W. Barr, as executors and residuary legatees. And this is argued by de- fendants' counsel, not on the ground that the testator has expressed any such intention or wish in the will, but for the reason above suggested, that the purpose of the devise in favor of complainant Maria was accomplished when the child died; in other words, that the purpose and object of the devise was the maintenance and ed- ucation of said child. Although this is expressed to be one pur- pose, yet it is believed that the primary object and *chief* purpose was the maintenance and support of the mother, during her life, thereby to enable her to do her duty to her child or children. This was expected of her, and that of course she would raise and edu- cate such and so many as her late husband left with her. It is true, according to the authorities cited by defendants' counsel, and upon principle, that " property given by will for certain purposes, results when those purposes are accomplished; or that nothing more is subject than those purposes require." But the application of the rule in this case is not so readily perceived. The testator has been explicit, and has directed, in the very next clause, that the remainder in fee, *upon the decease of said Maria*, shall go to said child or children and their heirs. Indeed, taking the two clauses together, he has so said expressly, and thus has left his intention unembarrassed, and not perplexed with any doubts what- ever in relation to this matter. But there is another defense. De- fendants sets up an agreement made, as he says, on the death of said child, between him, Ennes, and Keys, the other executors named in the will, of the one part, and complainant (of the other part meaning), in substance, that the annuity mentioned in the will of two hundred dollars, should be paid her while unmarried, and the one thousand dollars in lieu on her marriage, as a satisfac- tion of all claim on her part under the will. It is not said that the above agreement was in writing, nor is it stated to be a purchase

by them or a sale by her of her life estate in said farm. But we understand defendant that it was an agreement to give her precisely what she was entitled to under the will according to the construction, he *and they and she gave to the will at the time. [367 They made a verbal agreement to give her what was her own, by the construction they put upon the will. Defendant says he did not advise her, as to the construction of the will, but left her to act for herself, and by the advice of her other friends. Her brother advised her. Defendant states unsubstantial and unsatisfactory apologies and excuses for not performing this agreement on their part. They were men dealing with a weeping widow, who, a little more than a year before, had lost her husband, and just then her only child! But the agreement is denied by her, and is not proved. And unsuitable as the time was, yet, in this respect, if it were otherwise, and the agreement stated was proved, it would be no defense against the right now claimed; because the right was not considered as existing and was not therefore the subject matter of the agreement.

The afflicted widow did not know, or imgaine she was parting with an estate for her life, producing an income, if properly managed, of two or three hundred dollars a year, and likely to increase in value. It was not the understanding of the parties, as we learn from defendants' answer; but their understanding was, that she was entitled only to the annuity and the composition thereof, on her marriage. It was that they were making some efforts to secure and pay to her, but have failed almost, if not altogether to do that, even according to his own showing. If the life estate had been distinctly the subject matter of the agreement, it could not be set up in this instance, without overstepping the statute of frauds. Such part performance is the foot and ground of the agreement (supposing it to have been for the life estate) as would take it out of the operation of the statute, is not stated and evidenced by proof. And besides now, after so long delay, and the rise of property, it would be unreasonable to enforce any such agreement. The evidence is not favorable to this defense; so far from showing that Mrs. Bigelow considered or understood she was parting with the estate in controversy, it strongly countenances the contrary belief. Her conversations given in evidence, were about her rights under the will, not about any agreement she had made to part with any of them. So far as the depositions

368]  *relate conversations of the husband, John Bigelow, they are idle, as having no bearing upon the defense set up in the answer. They, however, prove nothing of importance in this case; and if they did, would be obnoxious to the objection, that they prove, if anything, a verbal conversation concerning the sale of real estate.

Decree for complainants.