## LYONS v. EMPIRE FUEL CO.

(Circuit Court of Appeals, Sixth Circuit. January 6, 1920.)

### No. 3340.

1. JUDGMENT ⬥714—RIGHTS UNDER CONTRACT CONCLUSIVE WHEN DETERMINED.

   Where, in an action at law for breach of a written contract, in which the right to recover depended upon the construction of the contract, as to which the parties differed, defendant asked no equitable relief, as permitted by Judicial Code, § 274b (Comp. St. § 1251b), but, the court having held the contract ambiguous on its face, the question of its construction was fully heard on oral evidence of the facts and circumstances surrounding its execution, and submitted to the jury, who found for plaintiff, defendant cannot thereafter maintain a suit in equity to enjoin enforcement of the judgment and for reformation of the contract.

2. JUDGMENT ⬥720—ADJUDICATION CONCLUSIVE AS TO FACT IN ISSUE.

   A fact distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery cannot be disputed in a subsequent suit between the same parties, even if the second suit is for a different cause of action.

3. APPEAL AND ERROR ⬥171(3)—CONSTRUCTION OF PLEADINGS BELOW MUST BE ADHERED TO ON APPEAL.

   Where the question of the construction of a contract is directly put in issue by the court, and submitted to and decided by the jury on oral evidence introduced by both parties, without objection, as to the intention of the parties, it is too late to urge that the pleadings did not raise the issue.

Appeal from the District Court of the United States for the Southern District of Ohio; John E. Sater, Judge.

Suit in equity by the Empire Fuel Company against John E. Lyons. From an order granting a preliminary injunction, defendant appeals. Reversed, with direction to dismiss bill.

See, also, 257 Fed. 890, —— C. C. A. ——.

Murray Seasongood, of Cincinnati, Ohio, for appellant.

Arthur S. Dayton, of Phillipi, W. Va., and M. G. Sperry, of Clarksburg, W. Va., for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Bill in equity to restrain the enforcement of a judgment at law. The case is this:

Lyons sued the Fuel Company on the law side of the court below to recover damages for an alleged breach of a contract whereby Lyons was to transport, for the Fuel Company, coal by river barge from Hugheston, W. Va., to Pomeroy, Ohio, and there load the same into cars. The claimed right of action was based on plaintiff's contention that the contract required the Fuel Company absolutely to furnish for shipment 350 tons of coal per day during the one-year contract term. The Fuel Company contended that the contract bound it to furnish plaintiff coal for transportation only when cars could not be had for rail shipment. The trial court thought the contract ambiguous in this respect, and so submitted its construction to the jury, whose verdict necessarily involved a finding in favor of plaintiff's construc-

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tion. This court affirmed the judgment, holding the contract ambiguous, and the question of construction thus properly submitted to the jury. 257 Fed. 890, —— C. C. A. ——, where a history of the case and of the case and of the contentions of the parties will be found.

Thereupon the Fuel Company filed its bill, on the equity side of the court below, to restrain the enforcement of the judgment at law and for a reformation of the contract according to its own construction thereof, upon the ground that when the contract was made the minds of the parties fully met in an agreement which accorded with the Fuel Company's stated construction of the written contract, but that "through the mutual mistake of the parties, and by reason of the oversight and error of the attorney acting as scrivener to reduce said oral contract to writing," there were omitted therefrom definitions and statements limiting the subject-matter to 'such coal only as the Fuel Company could not get cars to transport, viz. what is called in the record "surplus coal." The bill makes part thereof the record of the proceedings in the court below on the trial of the law case, as appearing in the transcript presented in this court on review of that case, together with the opinion of this court on that review. Upon the filing of this bill the court below granted an injunction restraining enforcement of the judgment at law during the pendency of the equity suit. This appeal is from that order.

[1] We think the injunction was improperly granted, for the reason that it plainly appears by the bill that the proposition of fact asserted thereby as necessary basis for relief was, by the judgment in the suit at law, conclusively determined against the Fuel Company's contention. Lyons' suit for damages was planted upon the proposition that the contract required the Fuel Company absolutely to furnish for transportation at least 350 tons of coal per day. The suit was based upon the written contract alleged in the petition to so provide, and the writing itself, which was made part of the petition, expressed Lyons' agreement to "furnish sufficient barges * * * in which to load not less than 350 tons of coal per day, and * * * to transport all such coal to Pomeroy, Ohio, * * * and to load such coal into such cars as may be furnished at" that place.

The Fuel Company thus had explicit notice, through the petition, of Lyons' construction of the contract, and was thereby given the right and opportunity, under section 274b of the Judicial Code (Act March 3, 1915, 38 Stat. 956 [Comp. St. § 1251b]), to interpose and have heard the defense that the writing did not express the actual agreement, and to ask affirmative relief by way of its reformation. That (as the company contends) the case for equitable reformation would necessarily be tried as a case in equity (Union Pacific R. R. Co. v. Syas [C. C. A. 8] 246 Fed. 561, 566, 158 C. C. A. 531; Keatley v. Trust Co. [C. C. A. 2] 249 Fed. 296, 161 C. C. A. 304; Philippine Sugar Co. v. Philippine Islands, 247 U. S. 385, 388, 389, 38 Sup. Ct. 513, 62 L. Ed. 1177, arising under the Philippine Code of Civil Procedure) is not, in the view we take of the case, important here; and we think it equally unimportant that, as held in Railroad Co. v. Syas, supra, the case for equitable relief should be disposed of before pro-

ceeding in the action at law. In any event, the action at law would be stayed pending the hearing on prayer to reform. Prudential Co. v. Miller (C. C. A. 6) 257 Fed. 418, 421, —— C. C. A. ——. The point is that by the action at law opportunity was given the Fuel Company to try out then and there the case for reformation, and, to all intents and purposes, in the same case, although perhaps without a common-law jury, as to the plea for reformation. The Fuel Company did not take the benefit of this statute, but contented itself with a plea denying every allegation in the petition except its West Virginia incorporation. Had it pleaded mutual mistake, and asked reformation, it clearly could not again raise the question. Werlein v. New Orleans, 177 U. S. 390, 399, 20 Sup. Ct. 682, 44 L. Ed. 817. And there is respectable authority that the result would be the same if the existing right was not availed of.

Two decisions of the Circuit Court of Appeals for the Second Circuit illustrate this proposition: In Whitcomb v. Shultz, 223 Fed. 268, 273, 274, 138 C. C. A. 510, the right to resort to equity to cancel a contract alleged to have been obtained by fraud, after judgment at law awarding recovery thereon, was sustained for the reason that the contract was under seal and so could not have been attacked by defense at law; while in Du Pont v. Gardiner, 238 Fed. 755, 757, 758, 151 C. C. A. 605, the right to so resort to equity was denied for the reason that the contract there in question was not under seal, and thus the defense of fraud in its obtaining was open in the suit at law. In the latter case it was said that the result reached was the same as it would have been had the act of March 3, 1915, here in question, been in force.

In Knox County v. Harshman, 133 U. S. 152, 154, 10 Sup. Ct. 257, 258 (33 L. Ed. 586), it was said, by way of stating the converse rule, that—

"A court of equity does not interfere with judgments at law, unless the complainant has an equitable defense of which he could not avail himself at law, or had a good defense at law which he was prevented from availing himself of by fraud or accident, unmixed with negligence of himself or his agents."

In the instant case the Fuel Company had an equitable defense of which it could avail itself in the suit at law, even if the proceedings for affirmative relief were equitable in form. More or less analogy is to be found in decisions under general equity rule No. 30 (201 Fed. v, 118 C. C. A. v), which permits a defendant in a suit in equity, without cross-bill, to "set out any set-off or counterclaim against the plaintiff which might be the subject of an independent suit in equity against him." In Caflisch v. Humble, 251 Fed. 1, 163 C. C. A. 251, we held that the defendant's claim for damages for breach of a contract of purchase and sale of lumber, on account of which plaintiff was seeking to establish an equitable lien, was a counterclaim arising out of the transaction which was the subject-matter of the suit, and one which the defendant was obliged to set up or waive; and in Knupp v. Bell (C. C. A. 4) 243 Fed. 157, 156 C. C. A. 23, where in a suit to rescind a contract for the purchase of land judgment for defendants for the amount of the purchase-money notes (on denial of relief to plaintiff)

was affirmed as on a counterclaim, doubt was expressed whether defendants would not have waived such recovery had it not been set up in the answer.[1]

In Howard v. Leete, 257 Fed. 918, 925, —— C. C. A. ——, we found it unnecessary to decide whether the defense there presented would have been waived by failing to present it; so here we find it unnecessary to determine whether or not the Fuel Company lost its right to be heard upon the now asserted claim for reformation through failure to claim such relief by plea in the suit at law, for we think it clear that the proposition of fact here raised by the Fuel Company, and imperatively necessary to its relief, was distinctly put in issue on the trial of the suit at law, and was there directly determined against the company's contention.

Lyons' testimony tended to show that the parties intended by the contract that he was to have absolutely 350 tons of coal per day. After introducing the writing, he testified that before it was drafted he had a talk with the Fuel Company's manager about it; that the only difference between them was the price per ton for transportation; that on the day the contract was written the manager agreed to Lyons' terms of $1 per ton; that Lyons was then taken to a lawyer's office, where a contract was drafted; that the first draft failed to specify "the amount of coal I was to boat, and * * * that they were to furnish billing and * * * that they were to be responsible for my boats for a reasonable time until I came after them"; that he told them "he would not sign a contract like that, that he had to know what he was going to do and how many tons he was to get per day, so he would know how much work he had for his boats and barges"; that at that time he stated that he had understood from the manager that "the car supply was 32 per cent.," and that the latter said "that was about right"; that the lawyer "took the original draft, and interlined it and changed it, so it specified 350 tons and the billing, and also that he would be responsible for the safe-keeping of the barges." He further testified that the preparation of the second draft was hurried to enable the witness to catch a train. On cross-examination he denied having admitted to another party that under his contract he "was only to get surplus coal from the mine."

The Fuel Company's testimony was addressed even more specifically to the proposition that the oral contract which the writing was intended to cover applied only to surplus coal, and that the writing was intended, and was understood by all concerned, to state such agreement. The attorney who drafted it testified that he dictated it from information furnished him by Lyons and the Fuel Company's manager and mine superintendent, and "upon a statement of facts furnished by all of them"; that when the final draft was brought in, and just before it was signed, Lyons said, "Now, you have not agreed to give me any

---

[1] Cases such as Northern Assurance Co. v. Grand View Bldg. Ass'n, 203 U. S. 106, 27 Sup. Ct. 27, 51 L. Ed. 109; Lumber Underwriters v. Rife, 237 U. S. 605, 35 Sup. Ct. 717, 59 L. Ed. 1140, and Prudential Casualty Co. v. Miller, supra, are not helpful on the question of adjudication, for the contracts involved in those cases were not on their face ambiguous.

specific amount of coal whatever"; that the attorney then stated his understanding to be that "the basis of this contract is to provide for the loading of coal at such times as coal cars cannot be procured from the railroad; that the only coal that Mr. Lyons is entitled to is the coal which is actually run over the Coal Company's river tipple, and as no coal is ever run over the * * * river tipple while there are railroad cars to be filled, it would be impossible to provide in the contract for specifying any certain amount of coal to be delivered on any day or at any time; the purpose of it is to provide some means to keep this mine in operation when the railroad cars cannot be procured"; that thereupon the Fuel Company's mine superintendent and manager each made some explanations on their own behalf, and that Lyons then signed the contract.

The company's mine superintendent, as well as its manager, corroborated the attorney in all important particulars, including Lyons' objection that the contract did not "provide any certain tonnage," the superintendent saying that he replied, "Absolutely none; * * * we could not afford to give you any tonnage at the river whenever we get the railroad cars placed;" and that the manager explained that he "could not afford to ship coal by barge when cars were available." The superintendent testified expressly "that Mr. Lyons understood it and signed the contract." The manager stated that at the conversation previous to the day the writing was drafted he told Lyons that he "wanted him [Lyons] to transport their coal—such tons as we could not have railroad cars to load"; also that "all the terms of the contract were agreed upon at this meeting." After stating what occurred when the contract was signed, including the statement above narrated, he added, "It was plainly understood by all parties at that time." Another witness for the defendant testified that Lyons told him of the existence of his contract, saying:

"Whenever they have got cars at the mine, why I can't get the coal; but after that, when they have no cars there, then they will load the coal in my boats."

The Fuel Company's testimony was thus plainly addressed directly to the proposition that, when the contract was written, the minds of the parties had fully met in an agreement which accorded with the company's present construction of the writing, and that the latter was intended to express that agreement. This necessarily implied that, if the contract was to be held ambiguous, it could only be because of mutual mistake of the parties, and through error or oversight of the person charged with the duty of writing it, in not clearly stating the alleged specific limitation to surplus coal. The charge to the jury made this issue plain. The court said:

"The parties differ widely as to whether the defendant was obliged under the contract to furnish the plaintiff with the 350 tons of coal per day, or only the surplus that remained after shipments were made by rail. The plaintiff claims that the defendant was bound to supply his barges with 350 tons per day for each available working day of the year. The defendant denies that, and says it was obliged to furnish him for carriage only such coal as it did not ship by rail."

After stating the conflicting testimony respecting the occurrences at the attorney's office, the court said:

"It is for you jurors to say what occurred there, and if you cannot reconcile that evidence, then it will be for you to say whom you believe—whether you accept the statements of Lyons or of the other three parties."

And again:

"If you find from the evidence that at and before the signing of the contract it was interpreted to mean and was understood to mean that Lyons was to transport only the excess of coal over and above what was shipped by rail, and that he signed the contract with that understanding, he is bound by that interpretation, and he cannot say, if you so find, that he was entitled to a specific amount of coal per day."

And yet again, after discussing the testimony bearing upon the general issue, including the reasonableness of the differing constructions of the parties:

"What would reasonably prudent men, situated as the plaintiff and as the defendant's representatives were, naturally have done under the circumstances which surrounded them and of which they had knowledge at the time the contract was executed?"

The jury was asked:

"Did the plaintiff have a contract for a specific amount of 350 tons of coal a day, or was it simply for what remained and went over that river tipple after the car supply had been exhausted, after as much as the cars would take, and did these parties or not put a construction on that contract after it was executed? If they did (referring evidently to the later construction), they are bound by it; at least, it is a matter entitled to great consideration. *When you have decided what the contract is,* you will then have to say: Did the defendant break it?"

From this it seems equally plain that there was submitted the question, What was the contract on which the minds of the parties met? and that the verdict necessarily involved a finding that Lyons' construction of what the parties orally agreed (and what they intended) was right, and that the company's construction of what that oral contract was (and what the parties intended) was wrong. Indeed, the present bill expressly charges that Lyons could have obtained no judgment whatever in the suit at law, had the written contract "embodied the true intent and agreement of the parties at the time of its execution, as hereinbefore set out."

[2] It is fundamental that a fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties, even if the second suit is for a different cause of action. So. Pacific R. R. Co. v. United States, 168 U. S. 1, 48–55, 18 Sup. Ct. 18, 42 L. Ed. 355. This principle, in our opinion, controls this case. The ultimate points of controversy in the two cases are the same, and there is thus "identity in the thing sued for." We find nothing to the contrary in Lyon v. Perin, 125 U. S. 698, 700, 8 Sup. Ct. 1024, 31 L. Ed. 839. That case called for no definition of "identity." The principal question was whether the dismissal of the bill for lack of prosecution worked a final adjudication against the relief claimed un-

der the bill. The discussion of the authorities contained in the opinion in So. Pacific R. R. Co. v. United States, supra, plainly establishes the identity of the point in controversy in the respective suits.

It is not enough to say that the interpretation in the suit at law of the written contract was "merely secondary and collateral to the main issue," which was whether Lyons could recover damages. This, indeed, is the issue to which the reformation here proposed is ultimately directed. So the determination in the suit at law that the actual contract was as Lyons claimed it to be was made necessary to recovery.

We see no force in the argument that in the suit at law the validity of the contract as written was not attacked, while by the bill in equity its validity is assailed, "so far as it fails to express the true meeting of the minds of the parties," and that—

"The jury merely found what the contract as written meant. In the equity case the court would find what the parties meant in fact."

This, to our minds, is but to "stick in the bark," for identity of issue is not obscured by the fact that in the suit at law it was decided by a jury, because the writing was held ambiguous, while a court of equity is now asked to decide it because the writing is asserted to be unambiguously wrong. In each case the intention would be found by a consideration of both the writing and the oral testimony.

Were the Fuel Company's bill to be sustained, the result would be merely an appeal from the verdict of the jury to the opinion of the judge. As said in So. Pacific R. R. Co. v. United States, supra (168 U. S. 49, 18 Sup. Ct. 27, 42 L. Ed. 355): The general rule (as to the conclusiveness of judgments in subsequent suits between the same parties, even where the suit is for a different cause of action)—

"is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue and actually determined by them."

[3] We see no merit in the contention that the point in controversy was not raised by pleading or upon the record. That it appears upon the record has been sufficiently shown.[2] In view of the state of the pleadings already referred to, and (a subject later referred to) the introduction without objection, of oral testimony concerning the intention of the parties, it is too late to urge that the pleadings did not raise the issue. In any event, the trial court put the question directly in issue, and this court has finally determined that the action was right, It is thus not vitally material whether or not the Fuel Company voluntarily submitted that issue. But we are the better content with the

---

[2] Indeed, the Fuel Company's brief in this court on review of the judgment in the suit at law expressly states that at the trial Lyons "based his suit entirely upon his theory of the construction of the contract, to wit, that it required [the Fuel Company] to furnish to [Lyons] in his barges the sum of 350 tons of coal per day."

conclusion that the company has had its day in court because of the way in which the crucial question was treated by it on the trial of the suit at law. It made no objection whatever to Lyons' testimony, whose manifest object was to show the intention of the parties in making the contract. The objection to the introduction of the written contract (no ground being stated) had no tendency to suggest objection to parol testimony of the actual agreement; and it was already clear from Lyons' petition how he construed the contract.

The Fuel Company produced four witnesses, and went into the subject fully. The first two of its requests to charge were addressed to a construction by the jury of the contract. The third was on the theory that the contract was clear and unambiguous.[3] Lyons asked instruction that the contract unambiguously meant what he claims was intended, and asked for the jury's interpretation only in case the contract was held ambiguous. To the charge as given the Fuel Company took no effective exception, stating, on the contrary, that it would file a mere formal exception to it, in so far as it fails to include all of the material elements in the charges requested by the Fuel Company, "if there is any such failure," coupled with the statement that counsel was not certain that every material part of the charges requested was not embodied, and that if, on opportunity to examine the charge, he found that all were included, even that exception would be withdrawn. This attitude was persisted in, in the face of suggestion that it was ineffective. The natural construction of the company's attitude is that it believed, from the nature of the court's charge, and from the nature of the testimony, and the number of its own witnesses, that the jury would find with it, and that it was not unwilling to have the issue so submitted.

We may assume, for the purposes of this opinion, that had the question of intention not been submitted to the jury, or had such submission not been sustained on review, or had the Fuel Company been refused opportunity by plea to ask reformation when Lyons' testimony of intention came in, a mere mistake of law in construing the writing as unambiguous (as was probably the reason the plea took the form it did) would not have precluded the Fuel Company from asking reformation in equity. It is enough to say that no such situation is presented.

A party cannot be permitted to speculate upon the chance of success, in substantial effect acquiesce in the submission of an issue to the jury, and then urge that, as it did not invite that issue, it was not bound thereby.

The order of the District Court is accordingly reversed; and inasmuch as the question involved is one of law, determining the ultimate rights of the parties, and is fully presented by the record, the court below is directed to enter decree dismissing the bill of complaint. Harriman v. Northern Securities Co., 197 U. S. 244, 287, 25 Sup. Ct. 493, 49 L. Ed. 739.

---

[3] The point was saved by exception to the refusal to give the Fuel Company's requested charges "except as the same are given in the general charge," and there had been motion to direct verdict at the close of the testimony, no statement of reason therefor appearing in the record.