FRANCIS H. FISHER, INC., Plaintiff,

v.

MIDWESCO ENTERPRISE, INC., et al., Defendants.

No. C–3–78–356.

United States District Court, S. D. Ohio, W. D.

Oct. 1, 1979.

---

Hugh Barnett, Springfield, Ohio, for plaintiff.

Jerome G. Menz, Xenia, Ohio, for Nadler Tube Corp.

Marshall L. Clark, Xenia, Ohio, for Midwesco Enterprise Inc.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court upon motion for summary judgment by defendants Midwesco Enterprise, Inc. and Mid-Atlantic Pipe Corporation pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The facts that gave rise to this dispute are as follows: In August, 1973, plaintiff Fisher, Inc. learned that Wright-Patterson Air Force Base at Dayton, Ohio intended to invite bids on the installation of certain underground high temperature hot water lines. Fisher submitted a bid on this project. Prior to such submission Fisher obtained a quotation for supplying the conduit from the Permapipe Division of defendant Midwesco Enterprise, Inc. Fisher was awarded the contract on September 20, 1973.

By an exchange of a purchase order and an acknowledgment Fisher entered into a contract of sale with Midwesco under which Midwesco agreed to supply the conduit for the sum of $58,000.00. Midwesco's acknowledgment contained certain terms and conditions of sale, including a provision limiting its liability to the cost of the materials furnished. Midwesco delivered the conduit in January, 1975 and Fisher paid the purchase price in full and installed the conduit.

After installation, various defects began to appear in the conduit. The initial defects ("First Phase") were in the 24″ outer casing located generally in the north half of the project. The next defects appeared ("Second Phase") in the five inch inner pipe, which failed to maintain water pressure, indicating a leak. After the commencement of a lawsuit in the state courts, defects were found in the 24″ outer casing located in the south half of the project ("Third Phase").

Upon discovery of the initial defects in the outer casing and in the 5″ inner pipe, a meeting was held between Fisher and Midwesco at Wright-Patterson Air Force Base in April, 1975. As a result, Midwesco directed Fisher by letter to proceed with an on-site repair of the defective conduit. Fisher was paid for some but not all of this work.

When the initial suit was filed, the "Third Phase" defects had not appeared. During the pendency of such suit, these defects appeared and in reliance upon the April 17, 1975 letter, Fisher proceeded with additional on-site repair work and testing. Certain of the costs of this work were paid; certain costs remain unpaid.

In 1976 Fisher brought an action referred to above against Midwesco in the Greene County, Ohio Common Pleas Court with respect to damages arising from "First Phase" and "Second Phase" defects in the conduit. Fisher claimed damages by virtue of (a) breach of the implied warranties of fitness and merchantability in the contract of sale; (b) quantum meruit; (c) the additional promise to pay for on-site repair and testing; and (d) fraud by reason of misrepresentation. Nadler Tube (predecessor of defendant Mid-Atlantic Pipe Corporation) was joined in an amended complaint because of its independent oral promise to pay for the repairs and testing.

On May 2, 1977, plaintiff dismissed Nadler Tube Corporation as a defendant in the state action "with prejudice," pursuant to Rule 41 of the Ohio Rules of Civil Procedure.

Prior to trial in the first suit and pursuant to a motion by Midwesco, the court

excluded all reference to "Third Phase" defects and damages relating thereto.

Trial commenced in the Greene County Common Pleas Court on May 2, 1977. Plaintiff submitted evidence to support its theory of breach of the contract of sale and of the subsequent letter of April 17, 1975. It submitted evidence with respect to the formation of the contract of sale, evidence to show the defects in the conduit and evidence of damages. Midwesco denied that the conduit was defective and asserted that, in any event, the contract of sale contained a limitation of liability, which limitation had been met.

At the conclusion of Fisher's case, the trial judge directed a motion against Fisher and in favor of Midwesco, specifically finding that Midwesco's limitation-of-liability was a part of the contract of sale. He went on to conclude that since the limitation of liability had been met, Fisher was precluded from recovery with respect to all of its counts for breach of contract and quantum meruit.

■ Fisher now brings this action in equity for reformation of the contract. The primary issue to be decided in this case is whether the bringing of an action for breach of contract bars a subsequent action for reformation. In this diversity action the substantive law of the State of Ohio must be applied. See generally, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■ Rule 56(c) permits the Court to grant summary judgment when there is no genuine issue of material fact and when the moving party is entitled to judgment as a matter of law. *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944); *Tee-Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 1193, 1195 (6th Cir. 1974). In deciding a motion for summary judgment, the movant has the burden of showing conclusively that there exists no genuine issue as to any material fact and the evidence together with all inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion. *Smith , et al. v. Hudson, et al.*, 600 F.2d 60 at 63 (6th Cir. 1979); citing *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam); *United States v. Articles of Device, etc.*, 527 F.2d 1008, 1011 (6th Cir. 1976); *Ott v. Midland-Ross Corp.*, 600 F.2d 24 (6th Cir. 1979). Applying this standard, defendant's motion for summary judgment should be granted.

■ A comprehensive definition of *res judicata* is as follows: "The doctrine of *res judicata* is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue, as to the parties and their privies, in all other actions in the same of any other judicial tribunal of concurrent jurisdiction." *Norwood v. McDonald*, 142 Ohio 299, 52 N.E.2d 67 (1943). As to the same cause of action a final judgment on the merits by a court of competent jurisdiction "constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, including parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac*, 94 U.S. 351, 24 L.Ed. 195 (1877); *International Ass'n of Machinists*, 350 F.2d 512 (6th Cir. 1965); See: Moore's *Federal Practice* 0.410 (2d ed., 1974).

■ To constitute a bar there must be an identity of the causes of action. *Norwood v. McDonald, supra*. In determining whether two actions constitute the same cause of action for the purpose of applying the doctrine of *res judicata*, the primary tests are the identity of facts creating the right of action in each case; the identity of the evidence necessary to sustain each action; and the accrual of the alleged rights at the same time. If it is doubtful whether a second suit is for the same cause of action as the first, it is a proper test to consider whether the same evidence would sustain

both. This method has been called the best and most accurate test. If the same facts or evidence would sustain both actions, the two actions are considered the same within the rule that the judgment in the former is a bar to the subsequent action; if, however, the two actions rest upon different statements of facts, or if different proofs would be required to sustain the two actions, a judgment in one is no bar to the maintenance of the other. *Norwood v. McDonald, supra; Henderson v. Ryan*, 13 Ohio St.2d 31, 233 N.E.2d 506 (1968).

In the case at bar the issues are identical, involving the same parties, and are sustained by the same evidence. There is an identity of the evidence necessary to sustain both actions and there was an accrual of the rights of the parties at the same time. The contract is the same, the subject of the action is the same, and the parties are the same.

The facts of *Lyons v. Empire Fuel Co.*, 262 F. 465 (6th Cir. 1920), *cert. den.* 252 U.S. 582, 40 S.Ct. 393, 64 L.Ed. 727 (1921) are almost identical to those of the instant case. In *Lyons,* plaintiff sued the Fuel Company on the law side of the court below to recover damages for an alleged breach of contract, whereby Lyons was to transport for the Fuel Company coal by river barge from Hugheston, W. V., to Pomeroy, Ohio. The claimed right of action was based on plaintiff's contention that the contract required the Fuel Company absolutely to furnish for shipment 350 tons of coal per day during the one-year contract term. The Fuel Company contended that the contract bound it to furnish plaintiff coal for transportation only when cars could not be had for rail shipment. The trial court thought the contract ambiguous in this respect, and submitted its construction to the jury. The jury found in favor of plaintiff's construction of the contract and the United States Court of Appeals for the Sixth Circuit affirmed the judgment.

Thereupon, the Fuel Company filed a bill on the equity side of the court below to restrain the enforcement of the judgment at law and for a reformation of the contract according to its own construction thereof.

The United States Court of Appeals for the Sixth Circuit ruled that the injunction was improperly granted. It held that where plaintiff in a contract action forbears to seek reformation for mistake, a remedy then available to him in that action, and permits the case to go to final judgment, he will be barred from bringing a later suit for reformation. The Court said that:

> The point is that by the action at law opportunity was given the Fuel Company to try out then and there the case for reformation, and, to all intents and purposes, in the same case, although perhaps without a common law jury, as to the plea for reformation. The Fuel Company did not take the benefit of this statute, but contended itself with a plea denying every allegation in the petition except its West Virginia incorporation. Had it pleaded mutual mistake, and asked reformation, it clearly could not again raise the question . . . And there is respectable authority that the result would be the same if the existing right was not availed of. 262 F. at 467.

Where courts of law and of chancery have concurrent jurisdiction, and a party electing to pursue his remedy in one fails, he is not permitted to resort to the other. *Curtis & Wilkins v. Cisna's Admr's.*, 1 Ohio 429 (1824); *Buell v. Cross*, 4 Ohio 327 (1831). In *Buell v. Cross*, 4 Ohio at 331, the Court held that: "A person having an option of law or equity, after selecting one tribunal cannot resort to the other."

A party defending is bound to set up all matters which are strictly matters of defense, and if he fails to do so, he cannot afterward relitigate those same matters in a new suit. *Silber v. First Catholic Slovak Union*, 23 Ohio App. 198, 154 N.E. 350 (1926); *Swensen & Sears v. Cresop*, 28 Ohio St. 668 (1876). "It has also been authoritatively determined that, when a party has been sued, he must set up all the defenses he has to that cause of action, and that, upon his failure so to do, he is barred in a subsequent suit from further setting up those defensive facts of which he might

**174**

have availed himself in the earlier litigation." *Metzger v. Metzger,* 32 Ohio App. 202, 167 N.E. 690, 691 (1929). The general rule is that a former adjudication settles all issues between the parties that could have been raised and decided as well as those that were decided; and that litigants should disclose all of their claims and contentions so that there may be a timely end to litigation. *First National Bank of Cincinnati v. Doyle,* 193 N.E.2d 442, 447 (Ohio Prob. 1962); *Covington and Cincinnati Bridge Company v. Sargent,* 27 Ohio St. 233 (Ohio 1865).

■ Finally, plaintiff's contention that "third phase" defects were not litigated in the prior action and should not be considered is barred by the doctrine of collateral estoppel. As the case of *Norwood v. McDonald, supra,* points out: "A point or fact which was actually and directly in issue in a former action and was there passed upon and determined by a court of competent jurisdiction may not be drawn in question in any future action between the same parties or their privies, whether the cause of action in the two actions be identical or different." The final adjudication of a material issue by a court of competent jurisdiction binds the parties in any subsequent proceedings. *Norwood v. McDonald, supra.* Any determination of liability on the "third phase" defects would turn directly upon the issues already litigated in the subsequent suit and this Court is estopped to re-try those issues.

■ As to plaintiff's contention that Mid-Atlantic Pipe Corporation, successor to Nadler Tube Corporation, be included in this action, "where a party to an action consents to a judgment of dismissal 'with prejudice,' . . . such judgment concludes the rights which [plaintiff] did assert or should have asserted therein to the same extent as they would have been concluded if the action had been prosecuted to a final adjudication against those rights." *Horne v. Woolever,* 170 Ohio St. 178, 182, 163 N.E.2d 378, 382 (1959).

Accordingly, defendants' motion for summary judgment is hereby GRANTED and plaintiff's complaint is hereby DISMISSED.

It is so ORDERED.