**In re KDI CORPORATION, Debtor.**

**Bankruptcy No. 61463.**

United States Bankruptcy Court,
S. D. Ohio, W. D.

Sept. 2, 1981.

John Weld Peck, Cincinnati, Ohio, for claimant.

Robert O. Edington, Cincinnati, Ohio, for debtor.

BURTON PERLMAN, Bankruptcy Judge.

KDI Corporation (hereinafter referred to as "debtor") filed a petition for relief under Chapter XI of the Bankruptcy Act on December 30, 1970, and its amended Plan of Arrangement was subsequently confirmed. The subject claim in the motion now before us is that of Terrence J. Matthews who was formerly the president of, and a shareholder in Electronic Plating Service (EPS), a California corporation which had merged with

debtor and continued to operate under the name KDI–Electronic Plating Service.

Matthews' proof of claim sets forth two related claims. Claim "A" alleges that debtor is indebted to Matthews for a proportionate amount of "shares, funds and other considerations which were transferred from the shareholders of the former Electronic Plating Services, Inc., and by the former Electronic Plating Services, Inc., to KDI–Electronic Plating Service Corporation, a wholly-owned subsidiary of the Debtor. . . .". Claim "A" states further that it "is presented to maintain the rights of claimant pending the outcome of a litigation pending in the United States District Court for the Southern District of Ohio, Western Division, entitled *DIODES, INC. et al. v. KDI CORPORATION*, Civil Action No. 8080, and is submitted without prejudice to the rights asserted by that suit." Claim "B" alleges that plaintiffs in the *Diodes* action sought rescission of a merger between EPS and KDI–Electronic Plating Service "on grounds that the debtor, its officers, agents and servants committed common law and statutory fraud, breach of warranty of financial condition, and violation of the provisions of the federal securities statutes, the allegations being more clearly set out in the amended complaint, a copy of which is attached." Claim "B" seeks a proportionate amount of any damages awarded to plaintiffs in the *Diodes* action if the District Court were unable to grant the rescission remedy.

In the *Diodes* action, Matthews had been joined as an involuntary plaintiff upon the finding of the District Court that he was an indispensable party to that lawsuit. Subsequent to that determination, the District Court ordered that he be made a party defendant, rather than plaintiff. On November 14, 1974, Matthews filed a cross-claim against debtor in the District Court action, alleging the same violations as that set forth in the proof of claim filed in the Chapter XI proceeding.

In December of 1975, a discussion took place between Matthews and Louis W. Matthey, the president of debtor. The precise nature of that discussion is now disputed, but it is undisputed that an oral agreement was struck which provided that if Matthews withdrew his cross-claim in the *Diodes* action, and the action was settled out of court, Matthews would receive a pro rata distribution of the settlement, along with the plaintiffs in the suit. Subsequent to that discussion, Matthews filed a motion to dismiss his cross-claim with prejudice in the *Diodes* action on February 27, 1976. By order of the District Court on that same date, Matthews' cross-claim was dismissed with prejudice. The remaining parties to the *Diodes* action eventually reached a settlement of that suit. Nothing is contained in the record before us that would indicate that Matthews received or did not receive any payment pursuant to the settlement. We can reasonably infer, however, that no payment was received, for otherwise the present question would not have been presented to us.

Now before us is debtor's motion to dismiss Matthews' claim in this Court. The matter came on for hearing at which time argument of the parties and testimony by Matthey was heard. The record before us consists of debtor's motion, a transcript of the April 7th hearing, a deposition of Matthey taken in the *Diodes* action and post-hearing memoranda submitted by the parties setting forth their respective positions.

To resolve the issues raised by the present motion we must first consider whether the District Court's dismissal with prejudice of Matthews' cross-claim bars him under the doctrine of *res judicata* from pursuing his claim in the Chapter XI proceeding.

Under the doctrine of *res judicata*, a judgment on the merits in a prior suit involving the same parties or their privies precludes a subsequent suit upon the same cause of action. *Parklane Hosiery v. Shore*, 439 U.S. 322, 326, n.5, 99 S.Ct. 645, 649 n.5, 58 L.Ed.2d 552 (1979); *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955). Therefore, a prerequisite to invocation of the principle of *res judicata* is that there must

have been a final judgment on the merits in the prior [1] suit. *See generally* 1B Moore's Federal Practice, para. 0.409[1], at pp. 1001–12 (2d ed. 1980). It is clear that the District Court's order dismissing Matthews' cross-claim with prejudice is a final judgment, thereby permitting debtor to assert *res judicata* in this proceeding. The Sixth Circuit has repeatedly stated the effect of dismissal of an action "with prejudice." Such a dismissal operates as a "complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties." *Smoot v. Fox*, 340 F.2d 301, 303 (6th Cir., 1964). *See also Cream Top Creamery v. Dean Milk Co.*, 383 F.2d 358, 362 (6th Cir., 1967); *England v. Automatic Canteen Co. of America*, 349 F.2d 988 (6th Cir., 1965), *cert. denied*, 383 U.S. 925, 86 S.Ct. 928, 15 L.Ed.2d 845 (1966).

■ As we have seen, the prior judgment sought to be raised as *res judicata* in the subsequent action must have adjudicated the same cause of action as that pursued in the subsequent proceeding. The prior judgment:

"... is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to every other admissible matter which might have been offered for that purpose."

*Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1877).

■ The stage is then set for application of *res judicata* in that there has been a prior adjudication. We are not, however, now faced with a repeated suit, an effort to relitigate the same law suit, the common context in which *res judicata* questions arise. Instead, we are asked to apply *res judicata* which has arisen by reason of a prior suit, to a claim in bankruptcy. It is our conclusion that *res judicata* is equally applicable to affect a claim in bankruptcy after the subject of the claim has resulted in a judgment. Where, as here, the claim is clearly identified as having the same basis as that of a prior law suit, it follows as a matter of sound judicial administration that one ought not to be allowed to press the claim a second time once it has been resolved a first. Whether the legal rationale is that the claim is deemed merged into the judgment, or that considerations of judicial economy require it, makes little difference, for the outcome seems to us unarguably correct. Perhaps this explains the paucity of precedent on the subject. The only case which we have found to be directly in point supports our conclusion. *Handlan v. Walker*, 200 F. 566 (8th Cir., 1912). (While old, the *Handlan* case retained sufficient vitality to be cited in the somewhat more recent decision in the U.S. Supreme Court, *Heiser v. Woodruff*, 327 U.S. 726 at 736 and 742, 66 S.Ct. 853 at 861, 90 L.Ed. 1647 (1946)).

That we have reached the conclusion that the principle of *res judicata* based upon a prior judgment applies to a claim in bankruptcy, however, does not conclude our inquiry. Notwithstanding the application of the principle of *res judicata*, in the bankruptcy court particularly there is a limitation on it. Not unexpectedly, in this court of equity, to the extent that the issue has not been litigated in the proceeding leading to the prior judgment, a collateral attack upon the judgment on grounds of fraud is not precluded. That this latitude exists arises from the power and duty of the Bankruptcy Court fully to inquire into claims presented to it, and their validity. *Pepper v. Litton*, 308 U.S. 295, 305; 60 S.Ct. 238, 244–245, 84 L.Ed. 281 (1939). As the

---

1. Although a judgment rendered in a prior action is usually asserted as *res judicata* in a subsequent action, debtor here contends that the District Court's order dismissing Matthews' cross-claim precludes us from considering his claim in the Chapter XI proceeding even though that claim was filed prior to the District Court's order. It is immaterial, however, that the action in which the prior judgment is asserted as *res judicata* was commenced prior to rendition of the judgment or the action in which the judgment was rendered. *See Williams v. Ward*, 556 F.2d 1143, 1154 (2d Cir.), *cert. dismissed*, 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 323 (1977); *Moore, supra*, para. 0.405[1], at p. 627; Restatement of the Law of Judgments § 43 (1942).

court said in *Heiser v. Woodruff*, 327 U.S. 726 at p. 736, 66 S.Ct. 853 at p. 857:

"Undoubtedly, since the bankruptcy act authorizes a proof of claim based on a judgment, such a proof may be assailed in the bankruptcy court on the ground that the purported judgment is not a judgment because of want of jurisdiction of the court which rendered it over the persons of the parties or the subject matter of the suit, or because it was procured by fraud of a party. (citations omitted).

We have no hesitancy in coupling with this statement of the propriety of an inquiry into fraud in a prior judgment, another ground appealing to a court of equity, duress. *See Sea-Land Services v. Gaudet*, 414 U.S. 573, 579, 94 S.Ct. 806, 812, 39 L.Ed.2d 9 (1974).

The cause of action underlying Matthews' claim in the Chapter XI proceeding is patently the same as that asserted in his cross-claim in the *Diodes* action. Counsel for Matthews has not argued otherwise either at the hearing or in his post-hearing memorandum. The Chapter XI claim, which seeks rescission of the merger between EPS and KDI–Electronic Plating Service or alternatively, money damages, is based on debtor's violations of federal securities statutes, breach of warranty of its financial condition and common law and statutory fraud. Because the cross-claim sets forth these same violations in greater detail, the "same cause of action" requirement for application of *res judicata* is satisfied under any of the principal tests used to determine whether there is an identity of causes of action. *See Fisher Inc. v. Midwesco Enterprise, Inc.*, 477 F.Supp. 169 (S.D.Ohio 1979) ("the primary tests are the identity of facts creating the right of action in each case; the identity of the evidence necessary to sustain each action; and the accrual of the alleged rights at the same time." *Id.* at 172).

█ While Matthews does not dispute the application of *res judicata* on grounds that the same causes of action obtain in both judgment and claim, it is asserted in his memorandum that the prior judgment in the *Diodes* action is invalid because Matthews' dismissal of his cross-claim was procured by coercion on the part of Matthey. Assuming *arguendo* that coercion is a proper ground for disregarding the prior judgment in the *Diodes* action, we cannot agree that the evidence shows that such coercion occurred. In support of his coercion argument, Matthews points to testimony in Matthey's deposition (p. 59):

"I told [Matthews] that if he withdrew [his cross-claim] we would be agreeable in having him participate in any settlement as if he were still in the case, but if the case went to trial and he was out of it that he would not participate in any way, shape or form."

Matthey repeated the substance of this statement during his testimony at the hearing on the present motion. Transcript p. 24.

In our view, Matthey's statement merely presented Matthews with the option of withdrawing his cross-claim and participating in an out of court settlement, if any, or continuing to pursue the cross-claim, thereby foregoing an opportunity to participate in any eventual settlement of the action. We perceive no suggestion of coercion in such a proposal; Matthey merely expressed the terms upon which a settlement with Matthews could be achieved.

Matthews argues further that the motion to dismiss his cross-claim was pursuant to an understanding between Matthews and Matthey that the dismissal would not affect his right to pursue his claim in the Chapter XI proceeding. As evidence of this understanding Matthews relies solely upon a statement contained in a memorandum which accompanied his motion to dismiss the cross-claim. This statement says:

"[The filing of the cross-claim] was done to protect [Matthews'] interests until he could determine the ultimate course of action which he wished to take."

Immediately following this statement, the memorandum reads:

"Matthews has now made that decision and elected not to pursue a claim against defendants based on the sale of Electron-

ic Plating Service to KDI. Consequently, Matthews is hereby dismissing his cross-claim with prejudice."

While an agreement that a judgment will not act as a bar to a subsequent action on the same cause of action may be enforced, see Moore, supra, para. 0.405[1], at p. 629, we do not interpret the above statements as supportive of an understanding or an agreement between Matthews and Matthey that Matthews might proceed with his Chapter XI claim. The more logical construction of the statements is that Matthews was agreeable to giving up his right further to pursue his cause against debtor in the Diodes case. The contrary interpretation urged by Matthews is wholly inconsistent with his dismissal of the cross-claim with prejudice.

This brings us to the fraud contention of claimant. We have seen that the state of the law is that invocation of res judicata based upon a prior judgment when a claim in bankruptcy is being pursued, does not shield the judgment from inquiry into whether it was procured by fraud, and we are obliged in considering the present motion to reach a conclusion on this position asserted by claimant. It is not, however, sufficient in order for claimant successfully to resist the present motion for him merely to assert that there was fraud in procuring the judgment; claimant must persuade us that the contention is colorable. As we have earlier observed there is no dispute between the parties that an agreement was entered into according to the terms of which claimant was to share in any settlement reached by the debtor with Diodes. As best we can tell, the basis for claimant's assertion of fraud is that debtor has taken the position that payment under the settlement agreement "is dependent upon information which Matthews has supplied proving to be accurate." As support for a contention of fraud apparently, claimant says that when the deposition of Matthey, president of debtor, was taken no mention was made of this condition precedent to payment pursuant to the settlement agreement.

An acceptable general statement regarding fraud is the following:

"The essential elements required to sustain an action for deceit are, generally speaking, that a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage. The representation must have been made to him either directly or indirectly, and must have been of such a nature that it was reasonably calculated to deceive him and to induce him to do that which otherwise he would not have done." 37 Am.Jur. 2nd 34; Fraud and Deceit § 12."

Considering the statements in his memorandum, the acts of debtor complained of by claimant certainly cannot be said to make out the elements of fraud enumerated above. If true, they would tend rather to support a claim of breach of contract based upon debtor's failure to pay claimant according to settlement agreement. For this, claimant has a right to seek relief by way of suit for breach of contract and we are informed by debtor that this is the subject of a suit pending in the California state courts.

The extent of Matthews' rights vis a vis debtor is now limited to enforcement of the settlement agreement. We are doubtful that this Court has jurisdiction to adjudicate the merits of a dispute over the settlement agreement. In considering this question, we must apply the bankruptcy laws in effect prior to October 1, 1979. See § 403(a) Pub.L. No. 95–598, Title IV, Nov. 6, 1978, 92 Stat. 2683. In interpreting the provisions of the prior Bankruptcy Act, courts have laid down the general rule that, subsequent to confirmation of a plan, reorganization courts retain jurisdiction as specified in the plan or the order of confirmation of the plan. See, e. g., In re Pittsburgh Terminal Coal Corp., 183 F.2d 520, 522 (3d Cir., 1950). In the present case, article VIII

of the amended Plan of Arrangement provides:

"The Referee in Bankruptcy shall retain jurisdiction to allow or disallow any and all claims filed herein to which objections are filed by the Debtor."

The District Court ordered the plan confirmed in all respects on June 3, 1973. Because the settlement agreement arose not from his claim in the Chapter XI proceeding, but from a plenary action in the District Court, the Plan does not afford us jurisdiction to consider Matthews' rights under the settlement agreement with debtor.

Accordingly, debtor's motion to dismiss will be granted.